IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MIDVALE COMMONS, LLC, et al. :  CIVIL ACTION
          :
    Plaintiffs,   :
          :
  v.       :  NO. 26-128
          :
CONSTRUCTION LOAN SERVICES II, :
LLC, et al.      :
          :
    Defendants.  :

## NOTICE OF MOTION

To: Philip S. Rosenzweig, Esquire
  Kevin D. McGowan, Jr., Esquire
  Briana S. Bryant, Esquire
  Silverang, Rosenzweig & Haltzman, LLC
  Woodlands Center
  900 E. 8th Avenue, Suite 300
  King of Prussia, PA 19406

PLEASE TAKE NOTICE that the within motion to dismiss has been filed in this matter to

which you may file a response within the time permitted by Local Rule 7.1(c) of the Local Rules

of Court.

WEIR LLP        DENTONS COHEN & GRIGSBY, P.C.


By:_____   By: */s/ David F. Russey*_____
 Walter Weir Jr., Esquire     David F. Russey, Esquire


Dated:  May 26, 2026

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MIDVALE COMMONS, LLC, et al. | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | NO. 26-128 |
| | : | |
| CONSTRUCTION LOAN SERVICES II, | : | |
| LLC, et al. | : | |
| | : | |
| Defendants. | : | |

## **DEFENDANTS' MOTION TO DISMISS**

Defendants, by their undersigned counsel, move this Honorable Court under Fed.R.Civ.P.

12(b)(6) to dismiss Plaintiffs' First Amended Complaint for failure to state a claim upon which

relief can be granted, all for the reasons set forth in the Memorandum of Law accompanying this

Motion.

Respectfully submitted:

WEIR LLP

By: _____
Walter Weir, Jr., Esquire
Pa. I.D. No. 23137
David V. Dzara, Esquire
Pa. I.D. No. 91274
The Widener Building
1339 Chestnut Street, Suite 500
Philadelphia, PA 19107
Phone/Fax: (215) 241-7751
wweir@weirlawllp.com
ddzara@weirlawllp.com

*Attorneys for Defendants Construction Loan
Services II, LLC d/b/a or a/k/a Builders Capital,
Valerie Moses, Bill Finzer, Lynda Rodriguez,
David Schultz, Michele Howe and Curt Altig*

DENTONS COHEN & GRIGSBY, P.C.

By: */s/ David F. Russey_____*
David F. Russey, Esquire
Pa. I.D. No. 84184
Jared M. DeBona, Esquire
Pa. I.D. No. 318528
625 Liberty Avenue
Pittsburgh, PA 15222
Phone: (412) 297-4900
Fax: (412) 209-1975
Email: david.russey@dentons.com
jared.debona@dentons.com

*Counsel for Defendants, Saluda Grade
Holdings,  LLC and Saluda Grade Asset
Management, LLC*

Dated:  May 26, 2026

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MIDVALE COMMONS, LLC, et al. | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | NO. 26-128 |
| | : | |
| CONSTRUCTION LOAN SERVICES II, LLC, et al. | : | |
| | : | |
| | : | |
| Defendants. | : | |

==========================================================

# MEMORANDUM OF LAW IN SUPPORT
# OF DEFENDANTS' MOTION TO DISMISS

Walter Weir, Jr., Esquire
David V. Dzara, Esquire
WEIR LLP
1339 Chestnut Street, Suite 500
Philadelphia, PA 19107
(215) 241-7751
wweir@weirlawllp.com
ddzara@weirlawllp.com

*Attorneys for Defendants Construction Loan Services II, LLC d/b/a or a/k/a Builders Capital, Valerie Moses, Bill Finzer, Lynda Rodriguez, David Schultz, Michele Howe and Curt Altig*

David F. Russey, Esquire
Jared M. DeBona, Esquire
DENTONS COHEN & GRIGSBY, P.C.
Drew W. Marrocco, Esquire, Pro Hac Vice
Louis A. Pellegrino, Esquire, Pro Hac Vice
DENTONS US LLP
625 Liberty Avenue
Pittsburgh, PA 15222

*Attorneys for Saluda Grade Holdings, LLC and Saluda Grade Asset Management, LLC*

**TABLE OF CONTENTS**

DEFENDANTS' MOTION TO DISMISS ................................................................ 1

STATEMENT OF FACTS ................................................................................... 2

    I.    The Trolley Car Loan Agreement (Germantown Project). .................... 2

        A.    Draw Requests and Requirements Under the Loan Documents. ................ 2

        B.    Forbearance and Amendment to the Trolley Car Loan Agreement. ........... 4

    II.    The Midvale Loan Agreement. ............................................................... 5

        A.    Draw Requests. ....................................................................................... 6

        B.    Forbearance and Amendment of the Midvale Loan Agreement. ............... 6

    III.    The Indiana Heights and Plymouth Square Loans. ............................... 7

        A.    Draw Requests ........................................................................................ 7

        B.    Forbearance and Amendment of the Indiana Heights Loan. ..................... 8

ARGUMENT ..................................................................................................... 8

    I.    Standard of Review ................................................................................. 8

    II.    Plaintiffs Have Released All of Their Claims ......................................... 9

        A.    Each Plaintiff Expressly Released Its Claims. .......................................... 9

        B.    Plaintiffs Have Not Alleged Facts Showing the Releases Were Invalid. . 10

        C.    Plaintiffs Accepted the Benefits of the Amendments Containing the Releases ................................................................................................. 12

    III.    Count I (RICO 1962(c)) Should Be Dismissed for Failure to State a Claim. ....... 13

        A.    Plaintiffs Do Not Allege an Enterprise with a Common Fraudulent Purpose .................................................................................................. 13

        B.    Plaintiffs Fail to Allege a Pattern of Racketeering Activity. ................... 15

            1.    No Plausible Wire Fraud Allegation. ........................................... 16

                a.    No Reasonable Inference of Fraudulent or Deceptive Conduct. .......................................................................... 16

                b.    Plaintiffs Cannot Rely on Alleged Oral Representations. 18

                c.    Gist of the Action Doctrine Bars Wire Fraud Allegations. 19

            2.    Plaintiffs Have Not Plausibly Pled Extortion As A Predicate Act. ................................................................................................ 22

    IV.    Count II Should Be Dismissed ............................................................. 23

    V.    Count III Should Be Dismissed. ........................................................... 23

    VI.    Conclusion. ........................................................................................... 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)......................................................................................................8

*Barris v. United States*,
1997 WL 459914 (W.D. Pa. Apr. 30, 1997)...........................................................11

*Boyle v. United States*,
556 U.S. 938 (2009)....................................................................................................13

*Brittingham v. Mobil Corp.*,
943 F.2d 297 (3d Cir. 1991), *overruled on other grounds, Jaguar Cars, Inc. v.
Royal Oaks Motor Car Co.*, 46 F.3d 258 (3d Cir. 1995) ...........................................13

*Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*,
140 F.3d 494 (3d Cir. 1998).....................................................................................22

*Bruno v. Erie Ins. Co.*,
106 A.3d 48 (Pa. 2014) .............................................................................................19

*C.J. Hughes* Constr. *Co. Inc. v. EQM Gathering OPCO LLC*,
No. 2:18-cv-168, 2020 WL 3448383 (W.D. Pa. June 24, 2020) .............................20

*Carrier v. William Penn Broadcasting Co.,*
233 A.2d 519 (Pa. 1967) ...........................................................................................11

*Care One Mgmt. LLC v. United Healthcare Workers East,*
43 F.4th 126 (3d Cir. 2022) ......................................................................................22

*Coleman v. Sears, Roebuck & Co.*,
319 F. Supp.2d 544 (W.D. Pa. 2003).......................................................................17

*Creeger Brick and Building Supply Inc. v. Mid-State Bank & Trust Co.*,
560 A.2d 151 (Pa. Super. 1989)...............................................................................25

*Crown Coal and Coke Co. v. Powhatan Mid-Vol Coal Sales LLC*,
929 F. Supp. 2d 460 (W.D. Pa. 2013)......................................................................20

*Curley v. Allstate Ins. Co.,*
289 F. Supp. 2d 614 (E.D. Pa. 2003) .......................................................................24

*Dansko Holdings, Inc. v. Benefit Trust Co.*,
991 F.3d 494 (3d Cir. 2021).....................................................................................18

*Dorenzo v. General Motors Corp.*,
 334 F. Supp. 1155 (E.D. Pa. 1971) ......................................................................10

*Geesey v. CitiMortgage, Inc.*,
 135 F.Supp.3d 332 (W.D. Pa. 2015)......................................................................25

*Gintowt v. TL Ventures*,
 226 F. Supp. 2d 672 (E.D. Pa. 2002) .....................................................................16

*Guirguis v. Movers Specialty Servs., Inc.*,
 No. 09-1104, 2009 WL 3041992 (3d Cir. Sept. 24, 2009) ........................................9

*Hull v. Welex, Inc.*,
 No. 02-7735, 2002 WL 31887043 (E.D. Pa. Dec. 30, 2002)...................................11

*In re Insurance Brokerage Antitrust Litig.*,
 618 F.3d 300 (3d Cir. 2010)..............................................................................13, 15

Viacom *Int'l v. Icahn*,
 747 F. Supp. 205 (S.D.N.Y. 1990) ........................................................................22

*Interpharm, Inc. v. Wells Fargo Bank, N.A.,*
 *655 F.3d 136 (2d Cir. 2011)*.................................................................................12

*Interwave Technology, Inc. v. Rockwell Automation, Inc.*,
 No. 05-398, 2005 WL 3605272 (E.D. Pa. Dec. 30, 2005).......................................19

*Kehr Packages v. Fidelcor, Inc.*,
 926 F.2d 1406 (3d Cir. 1991)............................................................................16, 22

*Kolar v. Preferred Real Estate Investments, Inc.*,
 361 F. App'x 354 (3d Cir. 2010) ........................................................................16, 21

*Lightning Lube Inc. v. Witco Corp.*,
 4 F.3d 1153 (3d Cir. 1993)...................................................................................23

*Lum v. Bank of Am.*,
 361 F.3d 217 (3d Cir. 2004)..................................................................................16

*Maio v. Aetna, Inc.*,
 No. 99-1969, 1999 WL 800315 (E.D. Pa. Sept. 29, 1999).....................................18

*McMullen v. Kutz,*
 985 A.2d 769, 778 (Pa. 2009) ..............................................................................24

*Morales v. Superior Living Products, LLC*,
 No. 07-4419, 2009 WL 3234434 (E.D. Pa. Sept. 30, 2009)...................................18

iii

*Morse v. Lower Merion Sch. Dist.*,
　132 F.3d 902 (3d Cir. 1997)................................................................................................9

*Nat'l Auto Brokers Corp. v. Aleeda Dev. Corp.*,
　364 A.2d 470 (Pa. Super. 1976)........................................................................................13

*Nayak v. McNees Wallace & Nurick LLC*
　2016 WL 7015711 (M.D. Pa. Sept. 13, 2016) ..................................................................11

*Ohama v. Markowitz*,
　434 F. Supp. 3d 303 (E.D. Pa. 2020) ................................................................................20

*Owen J. Roberts Sch. Dist. v. HTE, Inc.*,
　2003 WL 735098 (E.D. Pa. Feb. 28, 2003) ......................................................................20

*Rothermel v. Jaguar Cars*,
　No. 95-2313, 1996 WL 182803 (E.D. Pa. Apr. 17, 1996).................................................10

*Seal v. Riverside Federal Savings Bank*,
　825 F. Supp. 686 (E.D. Pa. 1993) .....................................................................................24

*Smith v. Jones, Gregg, Creehan & Gerace, LLP*,
　2008 WL 5129916 (W.D. Pa. Dec. 5, 2008)......................................................................13

Sedima, S.P.R.L. *v. Imrex Co.*,
　473 U.S. 479 (1985)...........................................................................................................22

*Sunlight Elec. Contracting Co. v. Turchi*,
　918 F. Supp. 2d 392 (E.D. Pa. 2013) ................................................................................21

*Third Nat. Bank & Tr. Co. of Scranton v. Lehigh Val. Coal Co.*,
　44 A.2d 571 (Pa. 1945) .....................................................................................................23

*Three Rivers Motor Co. v. Ford Motor Co.*,
　522 F.2d 885 (3d Cir. 1975)..............................................................................................11

*Todaro v. Richman*,
　170 F. App'x 236 (3d Cir. 2006) .......................................................................................17

*United States v. Frey*,
　42 F.3d 795 (3d Cir. 1994).................................................................................................16

*United States v. Turkette*, 452 U.S. 576, 583 (1981) ...................................................................13

*Universal Atlantic Systems, Inc. v. Honeywell Int'l, Inc.*,
　388 F. Supp. 3d 417 (E.D. Pa. 2019) ................................................................................13

iv

*Vacation Charters, Ltd. v. Textron Fin. Corp.*,
   No. 3:14-cv-2083, 2016 WL 354094 (M.D. Pa. Jan. 28, 2016) ...............................................11

*Walther v. Patel*,
   2011 WL 382752 (E.D. Pa. Feb. 4, 2011) ...............................................................................18

*Wells Fargo Bank, N.A. v. Chun Chin Yung*,
   317 F. Supp. 3d 879 (E.D. Pa. 2018) .......................................................................................25

*Wen v. Willis*,
   117 F. Supp. 3d 673 (E.D. Pa. 2015) .......................................................................................20

*Wilson Area Sch. Dist. v. Skepton,*
   895 A.2d 1250 (Pa. Super. 2006) .............................................................................................23

**Statutes**

18 Pa. C.S. §3923.....................................................................................................................22

18 U.S.C. § 1343.......................................................................................................................16

18 U.S.C. §§ 1962(a)-(c)..........................................................................................................23

18 U.S.C. §§ 1962(c), 1961(5)...............................................................................................1, 15

18 U.S.C. § 1962(c) and (d)....................................................................................................1, 13

18 U.S.C. § 1951.......................................................................................................................22

**Other Authorities**

Fed.R.Civ.P. 12(b)(6)...........................................................................................................1, 1, 11

Federal Rule of Civil Procedure 9(b).......................................................................................16, 17

Local Rules of Court Rule 7.1(c) ................................................................................................1

**INTRODUCTION**

Plaintiffs Midvale Commons, LLC ("Midvale"), Indiana Heights, LLC, Plymouth Square Associates I, LP (together "Indiana Heights") and Trolley Car Development, LP ("Trolley Car") (collectively "Plaintiffs") filed a First Amended Complaint ("FAC"), ECF No. 30, attempting to plead around the clear holes in their claims. Plaintiffs are sophisticated real estate developers who each defaulted on loans totaling approximately $85 Million. Despite the fact that the loans were each heavily negotiated, documented and subsequently amended, Plaintiffs now claim they should be excused from their defaults because the lender, Construction Loan Services II, LLC ("Loan Services" or "Lender"), the underwriter and current owner of the loans, Saluda Grade Holdings, LLC and Saluda Grade Asset Management, LLC (together "Saluda"), and six of Loan Services' employees, allegedly violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") in providing and administering these loans.[1] Plaintiffs also allege that Loan Services breached the loan agreements, even though they do not identify any actual breach of a specific provision, and acknowledge that they agreed to amend the agreements despite their own inability to perform.

Plaintiffs' claims are all based on the initial negotiation of the loan documents or the administration of loans and are subject to express releases that Plaintiffs admit they provided in consideration for defendants' subsequent agreement to amend the terms of each loan.

Even if not released, Plaintiffs' RICO claims do not plausibly support a fraudulent common purpose among the Defendants, nor have they alleged facts that plausibly demonstrate that each Defendant engaged in wire fraud or extortion. Plaintiffs' RICO allegations are based entirely on Defendants' lawful enforcement of their express contractual rights. That Plaintiffs hoped

---

[1]The RICO claims under 18 U.S.C. § 1962(c) and (d) name Loan Services and Saluda as well as six individuals who are alleged to have participated in administering the loan agreements: Valerie Moses, Bill Finzer, Lynda Rodriguez, David Schultz, Michele Howe, and Curt Altig.

Defendants would not strictly enforce those rights or that their own financial difficulties made their performance difficult is not a basis for a RICO claim. Similarly, even if Plaintiffs' breach of contract claim had not been fully released, the claim fails because it is not based on any actual breach but on Plaintiffs' displeasure that Loan Services demanded strict compliance with the agreed-upon contract terms.

## STATEMENT OF FACTS

The loans at issue in this case total a maximum commitment of approximately $85 Million and were all entered into by Plaintiffs within weeks of each other. Each of the Plaintiffs is an LLC controlled in whole or in part by Glenn Falso. While each loan agreement related to a different development project, the loan agreements had similar terms including an approximately two-year term and a draw process that was contingent on documentation and the progress of the project's development. *See* FAC Exhs. 1-4, ECF Nos. 30-1, 30-2, 30-3, 30-4 (the "Loan Documents").

## I.    The Trolley Car Loan Agreement (Germantown Project).

On February 25, 2022, Trolley Car entered into a financing loan with Loan Services for the development of real property located at 7611-17 Germantown Avenue in Philadelphia, Pennsylvania. FAC ¶ 101. The loan had a maximum amount of $33,071,970.86 and provided a two-year term with a maturity date of February 15, 2024. FAC Exh. 1, ECF No. 30-1, p. 45.

### A.    Draw Requests and Requirements Under the Loan Documents.

The Loan Agreement allowed Trolley Car to make draw requests, "by providing Lender with all necessary Draw Affidavits accompanied by all information, authorizations, and documents as Lender may request" to access funds. *Id.* § 5.1, p. 50. Loan Services determined the amount it would pay on the draw, at its option, by (i) review of documents or (ii) on a percentage completion basis with reference to the approved budget for the project. *Id.* § 5.3, p. 51. "Lender shall make Draws only for the categories and line items set forth in the Budget. **Borrower shall have no right**

**to reallocate costs or Loan proceeds between different line items or between categories** without Lender's specific written approval." *Id.* There is no contract requirement to provide draws based on the purchase of supplies or the completion of any particular work, only the percentage completion requirement set forth in the Loan Documents.

Throughout 2022 and 2023, Trolley Car made numerous draw requests, the majority of which were approved by Loan Services.

- On April 11, 2022, Trolley Car submitted a draw request to Loan Services for $723,000. Pursuant to the terms of the Loan Documents, Loan Services approved $528,597.72 of the request. FAC ¶ 121. Loan Services did not approve the remaining amounts because Trolley Car did not provide the required paperwork, and the line items failed to meet the percentage completion required. *Id.* ¶ 123. Loan Services provided the basis for the withheld amounts in writing to Trolley Car, detailing by line item, the amounts withheld and the reasons for the withholding. This written communication also provided contact information for Loan Services in the event Trolley Car had questions or concerns about the approval. FAC Exh. 8, ECF No. 30-8. Trolley Car did not dispute or question those determinations.

- On December 23, 2023, Trolley Car submitted a draw request for $986,300. Loan Services approved $969,243.64 of the requested amount. FAC ¶ 130. Loan Services did not approve the remaining amounts because Trolley Car did not provide the required paperwork, and the line items failed to meet the percentage completion required. *Id.* ¶¶ 131-132. Loan Services provided the basis for the withheld amounts in writing to Trolley Car, detailing by line item, the amounts withheld and the reasons for the withholding. FAC Exh. 11, ECF No. 30-11. Trolley Car did not dispute or question those determinations.

- On June 6, 2024, Loan Services approved $1,067,493.94 of a $2,483,475.77 draw

3

request. FAC ¶ 141. As with prior draw requests, Loan Services provided the basis for amounts withheld in writing to Trolley Car detailing, by line item, the amounts withheld and the reasons for the withholding. FAC ¶¶ 142-143. Among other reasons, Loan Services withheld amounts for the June 6 draw request because the request was for amounts over and above the budgeted amounts for line items and because the amounts were out of line with the percentage completion of the project. FAC Exh. 14, ECF No. 30-14. Trolley Car did not dispute or question those determinations.

- From September 2024 to May 2025 Trolley Car continued to make draw requests which Loan Services approved in part and denied in part. Loan Services denied amounts based on insufficient budget space available for line-item allocations and overall budget completion. Loan Services' determinations were all provided in writing to Trolley Car. FAC ¶¶ 145-153, 160-162, 166-185, FAC Exhs. 15-29, ECF Nos. 30-15 – 30-29.

- In late July 2025 Trolley Car sought to reallocate the availability of funds to different work on the project. FAC ¶¶ 187-189. The Loan Agreement expressly prohibited Trolley Car from such reallocation without the Lender's discretional consent. Loan Agreement § 5.3 ("Borrower shall have no right to reallocate costs or Loan proceeds between different line items or between categories without Lender's specific written approval."). Loan Services did not provide the requested consent. FAC Exh. 1, ECF No. 30-1, p. 51.

### B. Forbearance and Amendment to the Trolley Car Loan Agreement.

In February 2024, the Trolley Car Loan was approaching its contractual maturity date. FAC ¶ 112. Trolley Car sought an extension to the maturity date. *Id.* ¶¶ 112-114. Pursuant to section 7 of the promissory note, Trolley Car could obtain an extension of the maturity date if it met certain conditions, including "satisfactory progress in construction of the Project in accordance

4

with [the Loan Agreement and Loan Documents], as determined by [Loan Services]." FAC Exh. 1, ECF No. 30-1, p. 99. Based on its inspection of the property, Loan Services and Trolley Car determined that Trolley Car had not made sufficient construction progress to warrant an extension under section 7 of the promissory note. *Id.*

In lieu of an extension under section 7 of the promissory note, Loan Services and Trolley Car agreed to extend the maturity date of the Loan for 180 days to August 12, 2024, pursuant to a First Amendment to the Loan Documents. FAC ¶ 115, FAC Exh. 7, ECF No. 30-7. The signed amendment expressly states:

> Borrower has requested Lender extend the maturity date of the Loan pursuant to an extension option set forth in the Note (the **"*Built-In Extension*"**) **notwithstanding that certain conditions to the Built-In Extension remain unsatisfied**. Lender is willing to accommodate Borrower's request to exercise the Built-In Extension on the terms and conditions set forth in this amendment. (emphasis added).

FAC Exh. 7, ECF No. 30-7, p. 2.

As part of the consideration for the extension, the amendment also included a broad release of any and all claims Trolley Car "has or may have, or may be entitled to assert … for any reason whatsoever by reason of any actions, events, or occurrences prior to the date of this Amendment" and specifically stated that Borrower and Guarantor agree that Lender has not breached any of its obligations under the Loan Documents. *Id.* at pp. 3-4, § 6. The First Amendment specifically releases claims for fraud, misrepresentation, and lender misconduct. *Id.* Glenn Falso signed the amendment as Manager of Trolley Car and as Guarantor on the loan. *Id.* at p. 5.

## II.    The Midvale Loan Agreement.

Plaintiff Midvale is another limited liability company controlled by Glenn Falso. FAC ¶ 252. On January 27, 2022, Midvale took out a loan for a maximum amount of $8,218,343.90 with a maturity date of July 21, 2023. FAC Exh. 4, ECF No. 30-4, p. 56. The loan was for the refinance

and construction of a mixed-use five-story building with ground floor commercial space and 33 residential units. FAC ¶ 250. The Midvale Loan Documents had identical requirements for extensions and for draw requests as Trolley Car. FAC Exh. 4, ECF No. 30-4, p. 62-63.

### A.    Draw Requests.

On March 10, 2022, Midvale made a draw request for $262,972.22. FAC ¶ 258. Loan Services approved $88,345.78; it withheld the remaining amounts requested because certain line items of the draw requests did not comply with the requirements of the Loan Documents including proper documentation and percentage completion requirements. FAC ¶ 259. Loan Services provided a written breakdown of the amounts withheld and the reason for the withholding. FAC Exh. 45, ECF No. 30-45. Midvale did not dispute or question the determinations.

On March 23, 2023, Midvale made a $333,000 draw request. FAC ¶ 262. Loan Services approved $274,285.80 of the draw requests; it withheld the remaining amounts requested because it determined that certain line items did not comply with the requirements of the Loan Documents, including proper documentation and percentage completion requirements. FAC Exh. 45, ECF No. 30-45. Loan Services provided a written breakdown of the amounts withheld and the reason for the withholding and provided contact information for "any questions or concerns." *Id*. Midvale did not dispute or question the determinations.

### B.    Forbearance and Amendment of the Midvale Loan Agreement.

On August 1, 2023, Midvale sought an extension of the maturity date on the loan pursuant to section 7 of the promissory note. FAC ¶ 269. The extension terms in the promissory note were identical to those in the Trolley Car promissory note discussed above. FAC Exh. 4, ECF No. 30-4, pp. 51-52. Loan Services and Midvale determined that Midvale did not meet the conditions for an extension under section 7. Exh. 47, ECF 30-47.

In lieu of an extension under section 7 of the promissory note, Loan Services and Midvale

6

amended the Loan Documents to extend the maturity date to January 17, 2024. The amendment contained the same acknowledgement that the conditions to the Built-In Extension remain unsatisfied and that the Lender was nevertheless willing to accommodate Borrower's request to exercise the Built-In Extension on the terms and conditions set forth in the Amendment. FAC Exh. 39, ECF No. 30-39. The amendment also included the same broad release of any and all claims Midvale "has or may have, or may be entitled to assert … for any reason whatsoever by reason of any actions, events, or occurrences prior to the date of this Amendment." *Id.* The release specifically addresses claims for "fraud, misrepresentation [and] lender misconduct." *Id.* Glenn Falso signed the amendment as Manager of Midvale and as Guarantor on the loan. *Id.*

## III.    The Indiana Heights and Plymouth Square Loans.

Indiana Heights LLC, a company controlled by Glenn Falso, and Plymouth Square Associates, took out two loans from Loan Services to finance the Indiana Heights Project. The first loan had a maximum of $36 Million and the second loan had a maximum of $9,588,136.68. FAC ¶ 205. Indiana Heights executed both loans on March 30, 2022. FAC ¶¶ 207-208.

### A.    Draw Requests

In September 2023, Indiana Heights made a draw request of $1,057,500. Loan Services approved $603,760. Loan Services withheld the remaining amounts because it determined certain line items did not comply with the requirements of the Loan Documents percentage completion requirements. FAC ¶ 225. Loan Services provided a written breakdown of the amounts withheld and the reason for the withholding and provided contact information for "questions or concerns." FAC Exh. 38, ECF No. 30-38. Indiana Heights did not dispute or question the determinations.

On October 29, 2024, Indiana Heights made a draw request for $4,230,500. Loan Services approved $3,560,500 of the draw requests. Loan Services withheld the remaining amounts because it determined certain line items did not comply with the requirements of the Loan Documents

percentage completion requirements. FAC ¶¶ 234-235. Loan Services provided a written breakdown of the amounts withheld and the reason for the withholding and provided contact information for "questions or concerns." FAC Exh. 40, ECF No. 30-40. Indiana Heights did not dispute or question the determinations.

**B.       Forbearance and Amendment of the Indiana Heights Loan.**

In March 2024, Indiana Heights sought an extension of the maturity date on the loan pursuant to section 7 of its promissory note. FAC ¶ 227. The extension terms in the promissory note were identical to those in the Trolley Car promissory note discussed above. FAC Exh. 2, ECF No. 30-2, p. 57-58. Loan Services and Indiana Heights determined that Indiana Heights did not meet the conditions for an extension under section 7. FAC Exh. 47, ECF No. 30-47.

In lieu of an extension under section 7, Loan Services and Indiana Heights agreed to amend the Loan Documents to extend the maturity date to March 14, 2025, ". . . only on the terms and conditions set forth in this amendment." *Id.* The amendment also included a broad release of any and all claims Indiana Heights "has or may have, or may be entitled to assert . . . for any reason whatsoever by reason of any actions, events, or occurrences prior to the date of this Amendment" including claims for "fraud, misrepresentation and lender misconduct." Glenn Falso signed the amendment as the manager of Indiana Heights and as a Guarantor on the loan. *Id.*

**ARGUMENT**

**I.       Standard of Review**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and does not state a claim if it

8

consists of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* Determining the plausibility of allegations is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In deciding a motion to dismiss, a court "need not credit a complaint's 'bald assertions' or 'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997), and the court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Guirguis v. Movers Specialty Servs., Inc.*, No. 09-1104, 2009 WL 3041992, at \*2 (3d Cir. Sept. 24, 2009) (quoting *Twombly*, 550 U.S. 544, 555 (2007)).[2]

## II.    Plaintiffs Have Released All of Their Claims.

### A.    Each Plaintiff Expressly Released Its Claims.

Plaintiffs' claims relate to four separate loan agreements. Each Plaintiff signed amendments to their respective loan agreement in exchange for obtaining an extension of each loan maturity date. Each amendment includes a broad release covering the claims in this action. On August 1, 2023, Midvale and Glenn Falso as guarantor signed a First Amendment to the Midvale Loan Documents. On March 13, 2024, Trolley Car and Glenn Falso and Samuel Baker, as Guarantors, signed a First Amendment to the Trolley Car Loan Documents. On March 19, 2024, Indiana Heights and Glenn Falso and Mark Quigley, as Guarantors, signed a First Amendment to the Indiana Heights Loan Documents. Each of those amendments contained identical broad releases of all claims related to the loan. Specifically, each stated:

> **RELEASE**: Borrower and Guarantor agree that Lender has not breached any of its obligations under the Loan Documents, and Borrower and Guarantor have no claims against Lender, its predecessors, successors, assigns or participants, or any of their

---

[2]The majority of Plaintiffs' amendments to the Complaint are legal conclusions, *i.e.* the releases were "unconscionable," (FAC ¶ 25); the releases were signed "under duress," (FAC ¶ 27) the court should not consider contractual integration clauses signed by the parties" (FAC ¶ 295) that attempt to dodge the clear factual deficiencies in their claims.

> officers, directors, agents, employees, and other affiliates (collectively the **"Released Parties")** for fraud, misrepresentation, lender misconduct, lender liability, breach of alleged fiduciary duty, or other tort or wrongdoing. Borrower and Guarantor hereby release and forever discharge the Released Parties of and from any and all claims, causes of action, rights of offset, and rights of damages that Borrower or any Guarantor has or may have, or may be entitled to assert against the Released Parties for any reason whatsoever by reason of any actions, events or occurrences prior to the date of this Agreement that Borrower or any Guarantor has knowledge of as of the date of this Agreement, except for Borrower's rights to enforce Lender's further obligations under the Loan Documents, as amended hereby. The provisions, waivers, and releases set forth in this section are binding upon Borrower and Guarantor and their respective agents, employees, representatives, officers, directors, partners, members, joint venturers, affiliates, assigns, heirs, successors-in-interest and shareholders….

*See* First Amendments to each Loan Agreement, FAC Exh. 7, ECF No. 30-7; FAC Exh. 39, ECF No. 30-39; FAC Exh. 47, ECF No. 30-47.

Under Pennsylvania law, it is axiomatic that a valid release constitutes a complete bar to an action or claim which is the subject of the release. *Dorenzo v. General Motors Corp.*, 334 F. Supp. 1155, 1156 (E.D. Pa. 1971) (quoting *Mannke v. Benjamin Moore & Co.*, 375 F.2d 281, 285 (3d Cir. 1967)) ("'a valid release is an absolute bar to recovery for everything included in the release' and can only be set aside 'in the presence of clear, precise, and indubitable evidence of fraud, accidental means or incompetence of the party who is alleged to have signed it.'")

**B.      Plaintiffs Have Not Alleged Facts Showing the Releases Were Invalid.**

An executed release shifts the burden to plaintiff to establish that the release was invalid. *Rothermel v. Jaguar Cars*, No. 95-2313, 1996 WL 182803, at *2 (E.D. Pa. Apr. 17, 1996) (citing *Reed v. SmithKline Beecham Corp.*, 569 F. Supp. 672, 674 (E.D. Pa. 1983)). Plaintiffs do not allege facts to meet that burden. Each Plaintiff signed the release *after* negotiating terms of a loan extension. FAC ¶¶ 268-269 (regarding Midvale); FAC ¶¶ 227-229 (regarding Indiana Heights); FAC ¶¶ 111-115 (regarding Trolley Car). Further, each Plaintiff entered into the release with the

10

full understanding that Loan Services could and would enforce contractual draw request conditions including percentage completion and proper documentation requirements. *See, e.g.,* FAC ¶ 225 (Indiana Heights); FAC ¶¶ 120-134 (Trolley Car); FAC ¶¶ 257-265 (Midvale).

Plaintiffs now contend that the releases were signed under "duress" due to the potential they might default on the loans and financial constraints that could potentially prevent them from completing the projects. *See* FAC ¶¶ 86 (Trolley Car); FAC ¶¶ 228-229 (Indiana Heights); FAC ¶ 269 (Midvale). Plaintiffs contend that Defendants took advantage of their vulnerability in negotiating amendments to the agreements. However, it is well established under Pennsylvania law that financial pressure, hard bargaining, or threatened exercise of contractual rights is insufficient to establish duress as a matter of law. *Carrier v. William Penn Broadcasting Co.*, 233 A.2d 519, 521-22 (Pa. 1967); *Barris v. United States*, No. 93-508, 1997 WL 459914 at *11 (W.D. Pa. Apr. 30, 1997) "It is well settled that a threat to do what one has the legal right to do cannot be considered duress"). And specifically, in the context of a release, "merely . . . showing that the release was given under pressure of . . . financial circumstances" is insufficient. *Three Rivers Motor Co. v. Ford Motor Co.,* 522 F.2d 885, 893 (3d Cir. 1975); *see also Nayak v. McNees Wallace & Nurick LLC*, No. 1:15-CV-00933, 2016 WL 7015711, at *8 (M.D. Pa. Sept. 13, 2016) (with respect to a release, economic duress requires additional conduct above mere financial pressure). Moreover, where, as here, a party is free to come and go and consult with counsel, there can be no duress. *Id.; see, also Hull v. Welex, Inc.,* No. 02-7735, 2002 WL 31887043, at *2 (E.D. Pa. Dec. 30, 2002) (granting motion to dismiss where plaintiff signed release and holding financial pressure insufficient to invalidate a release.); *Vacation Charters, Ltd. v. Textron Fin. Corp.*, No. 3:14-cv-2083, 2016 WL 354094, at *8 (M.D. Pa. Jan. 28, 2016) (granting defendant's Rule 12(b)(6) motion based on a release agreement because plaintiff failed to state a claim for economic duress under

11

Pennsylvania law); *Interpharm, Inc. v. Wells Fargo Bank, N.A.*, 655 F.3d 136 (2d Cir. 2011) (demands of lender, which was otherwise under no obligation to continue extending credit, did not constitute the "wrongful threat" required to establish economic duress).

Plaintiffs generally allege that "a substantial portion of the conduct complained of in this Complaint occurred after the releases were executed and falls outside the temporal scope of any release contained in the 2024 modification releases." FAC ¶ 28. Plaintiffs do not however provide any specificity at all as to what post release conduct they claim supports a RICO cause of action against the Defendants nor do they explain what post release conduct breached any specific contract language or provision. Indeed, the releases are directly related to the primary allegations in the FAC that Lender breached paragraph 7.1 by not providing an extension and that it exercised its contractual rights in a strict and "onerous" manner.

Plaintiffs also confusingly allege that the releases do not apply to their claims because they were unaware that Saluda was the underwriter of the loans. Even if this were a coherent point (it is not), it is wholly inconsistent with other allegations in the FAC. Plaintiffs specifically allege that at the time they entered into the loan agreements "the term of the loan was negotiated and agreed to among [Plaintiffs], Loan Services and *Saluda Grade*." FAC ¶¶ 13, 109, 114, 213, 219. Plaintiffs also do not explain how Saluda's role as underwriter would affect their knowledge of any claims.

## C.    Plaintiffs Accepted the Benefits of the Amendments Containing the Releases.

Even if Plaintiffs had alleged facts sufficient to state a claim for economic duress at the time they signed the amendments, they each subsequently ratified the amendments and releases by continuing to accept the benefits of the amended agreements including by continuing to draw down significant amounts of money. *See, e.g.,* FAC ¶¶ 141, 145-146, 150 (Trolley Car post release draw requests); FAC ¶¶ 234, 237, 240 (Indiana Heights post release draw requests). Under Pennsylvania law, a party loses any defense of economic duress by accepting the benefits flowing from the

12

contract allegedly entered into under duress. *Universal Atlantic Systems, Inc. v. Honeywell Int'l, Inc.*, 388 F. Supp. 3d 417, 432 (E.D. Pa. 2019); *Nat'l Auto Brokers Corp. v. Aleeda Dev. Corp.,* 364 A.2d 470, 476 (Pa. Super. 1976).

### III.   Count I (RICO 1962(c)) Should Be Dismissed for Failure to State a Claim.

To state a claim for a violation of RICO, 18 U.S.C. § 1962(c), as Plaintiffs purport to do in Count I, a plaintiff must plausibly plead "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity," *In re Insurance Brokerage Antitrust Litig.,* 618 F.3d 300, 362 (3d Cir. 2010). Plaintiffs fall far short of plausibly alleging these elements.

#### A.   Plaintiffs Do Not Allege an Enterprise with a Common Fraudulent Purpose.

Plaintiffs contend vaguely that Saluda, Loan Services and six of Loan Services loan officers formed an "associated-in-fact 'enterprise'" to execute a "'loan to own' scheme designed to generate profit" through fraud. FAC Introduction ¶¶ 8-9. But Plaintiffs fail to allege actual facts that support a plausible inference that Defendants did so. Stripped of their conclusory rhetoric, the actual facts pled by Plaintiffs do not demonstrate Defendants agreed to do anything other than carry on lawful business by lawful means.

To plead an association-in-fact enterprise, a plaintiff must allege that a group shares: "a purpose, relationships among the associates, those associated with the enterprise, and longevity sufficient to permit the associates to pursue the enterprise's purpose." *Boyle v. United States,* 556 U.S. 938, 946 (2009) (citing *United States v. Turkette*, 452 U.S. 576, 583 (1981)). Normal business relationships, without more, are insufficient to support an association-in-fact enterprise. *Brittingham v. Mobil Corp.,* 943 F.2d 297, 301 (3d Cir. 1991), *overruled on other grounds, Jaguar Cars*, *Inc. v. Royal Oaks Motor Car Co.*, 46 F.3d 258 (3d Cir. 1995); *Smith v. Jones, Gregg, Creehan & Gerace, LLP,* 2008 WL 5129916, at *6 (W.D. Pa. Dec. 5, 2008) (conducting normal business is not sufficient to create an enterprise). Here the allegations show that Saluda underwrote

13

the real estate development loans pursuant to its guidelines which were fully disclosed, Loan Services administered the agreements in accordance with their terms and Loan Services' employees carried out the day-to-day servicing functions under the agreements.

There are no facts alleged that plausibly support an inference that Loan Services and Saluda (much less Loan Services' employees) shared any common purpose of defrauding or deceiving Plaintiffs. Instead, the facts alleged and exhibits appended to the FAC fully support the obvious alternative explanation that Defendants were simply acting to protect capital or make money in real estate financing. Plaintiffs allege no facts showing how the owner of the loans, the initial lender and servicer, and the servicer's employees share a common interest in Plaintiffs' defaulting on loans. Plaintiffs simply aver generally that the Enterprise was the execution of a systematic 'loan-to-own' scheme designed to generate profits through fraud, extortion, and eventual foreclosure on distressed collateral. FAC ¶ 307.

All the actions Plaintiffs complain about, however, are consistent with the lawful administration of real estate development loans by a loan servicer. The actions are also fully consistent with Defendants' rights under the Loan Documents. Further, all of Defendants' actions were fully transparent and disclosed. For example, the allegations themselves show that:

- Loan Services informed Plaintiffs before they signed the Loan Documents that it could not provide a 30-month initial term for Trolley Car or a 36-month initial term for Indiana Heights because Saluda Grade would not agree to it. FAC ¶¶ 107, 109 (Trolley Car); FAC ¶¶ 211-213 (Indiana Heights); FAC ¶ 253.

- The conditions for obtaining an extension of the maturity date under section 7 of the promissory note were expressly set out. *See e.g.,* FAC Exh. 7, ECF No. 30-7.

- The changed rate for the loans pursuant to the extensions was expressly set out in the written amendments to the Agreements. *See e.g.,* FAC Exh. 7, ECF No. 30-7.

- All denials of draw requests were communicated and explained in writing. *See, e.g.,* FAC Exhs. 8, 11, 14-29, 38-40, 44-45.

14

Indeed, the exhibits to the FAC show that, rather than foreclose at the first opportunity, Defendants provided extensions to each of the loan maturity dates, *see* FAC Exhs. 7, 39, 47 ECF Nos. 30-7, 30-39, 30-47, and that Loan Services approved and provided funding for the majority of draw requests. To assert an association-in-fact enterprise, Plaintiffs are required to plausibly allege that the enterprise functions as a free-standing association-in-fact which engages in a pattern of activity which differs from the usual and daily activities of its members. *In re Insurance Brokerage Antitrust Litig.*, 618 F.3d at 365 *et seq.* The FAC fails to identify any actions inconsistent with Defendants normal business.

## B.    Plaintiffs Fail to Allege a Pattern of Racketeering Activity.

Plaintiffs fail to plead "a pattern of racketeering activity," which requires a showing that each defendant participated in "at least two acts of racketeering." 18 U.S.C. §§ 1962(c), 1961(5). Here Plaintiffs allege wire fraud and extortion as predicate acts. Notably, Plaintiffs have not identified any communications (either in the FAC or in the appended attachments) that demonstrate that either Saluda or any of the named employees sent two or more wire or mail communications related to the alleged scheme.[3]

Plaintiffs have identified four categories of conduct they claim give rise to their wire fraud claims: (a) alleged failure to comply with contract terms; (b) non-responsiveness in administering the Loans; (c) refusal to fund loan requests in accordance with the Loan Documents; and (d) failure to honor extension terms in the Loan Documents. FAC ¶ 358(a)-(d).[4] Each is a contractual

---

[3]With respect to Saluda, Plaintiffs do not allege any specific facts other than ownership of the loans and its requirement for certain underwriting standards. *See, e.g.,* FAC ¶¶ 55, 57, 58. And, with respect to the individuals, there is not a single specific action, statement, or omission suggesting any intention to injure Plaintiffs or conspire with Loan Services or Saluda.

[4]Plaintiffs separately identify what they call "bait and switch" with respect to the term of the loan but as noted above the loan term was expressly incorporated into the loan documents.

15

obligation and Plaintiffs cannot, as they must, "tie each Defendant's alleged individual or joint conduct to 'fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension.'" *Gintowt v. TL Ventures,* 226 F. Supp. 2d 672, 678 (E.D. Pa. 2002) (citing *Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1416 (3d Cir. 1991)).

### 1.    No Plausible Wire Fraud Allegation.

To successfully plead a claim for wire fraud in violation of 18 U.S.C. § 1343, Plaintiffs must plead facts, with particularity plausibly showing: (1) a scheme to defraud, and (2) the use of communications transmitted by wire for the purpose of executing, or attempting to execute, the scheme. *United States v. Frey*, 42 F.3d 795, 797 (3d Cir. 1994). Importantly, "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Kolar v. Preferred Real Estate Investments, Inc.*, 361 F. App'x 354, 363 (3d Cir. 2010) (quoting *Western Assocs. Ltd. P'ship v. Market Square Assocs.*, 235 F.3d 629, 637 (D.C. Cir. 2001)). Further, the scheme or artifice to defraud "must involve some sort of fraudulent misrepresentation or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." *Lum v. Bank of Am.,* 361 F.3d 217, 223 (3d Cir. 2004) (quoting *Kehr Packages*, 926 F.2d at 1415).

### a.    No Reasonable Inference of Fraudulent or Deceptive Conduct.

Plaintiffs fail to identify any communications that are false or intended to deceive. They simply parrot the statutory requirements vaguely averring that Defendants "placed in post offices and/or in authorized repositories matter and things to be sent or delivered by the Postal Service, caused matter and things to be delivered by commercial interstate carriers, and received matter and things from the Postal Service and/or commercial interstate carriers, including, but not limited to Loan Documents, letters of intent, invoices, amendments, reports, data, summaries, statements and

16

other materials relating to the administration of the Loan-to-Own Scheme." FAC ¶ 330. The documents Plaintiffs attach to the complaint consist of contracts and communications regarding the servicing of the loans. There is no communication that Plaintiffs have identified as false or fraudulent. Because Plaintiffs' RICO claim is based on alleged fraudulent conduct (i.e., wire fraud), the violation must be pled with particularity under Federal Rule of Civil Procedure 9(b). *Todaro v. Richman*, 170 F. App'x 236, 238 (3d Cir. 2006). This requires Plaintiffs to allege the precise misconduct with which defendants are charged. *Id.* Plaintiffs must also allege who made the misrepresentation to whom and the general content of the misrepresentation. *Id.*

Plaintiffs identify only two specific statements (both oral) that they claim were false. The first relates only to the Indiana Heights Loan. Plaintiffs allege that one of a group of Loan Services executives (none of whom are defendants or alleged to be a part of the RICO conspiracy) "represented that the shorter term was a formality and that extensions would be granted to ensure completion of the Indiana Heights Project." FAC ¶ 214. The allegation does not specify which executive made the statement, when it was made or any other context. *Id.* But, even accepting *arguendo* that the allegation met the requirements of Rule 9(b) and were accepted as true, this is clearly not sufficient to support a claim for fraud or deception. First, the statement is not demonstrably false as Indiana Heights was provided an extension to the Indiana Heights loan agreement as reflected in the First Amendment. Second, statements as to "future or contingent events, to expectations or probabilities, or as to what will or will not be done in the future, do not constitute misrepresentations, even though the statements may turn out to be wrong." *Coleman v. Sears, Roebuck & Co.,* 319 F. Supp.2d 544, 551 (W.D. Pa. 2003).

Similarly, Plaintiffs' second alleged misrepresentation is again limited to the Indiana Heights Loan and consists of the allegation that unspecified Loan Services personnel told them

17

that "Loan Services was focused on supporting developers, promptly funding draws, and avoiding foreclosure except in extreme cases." FAC ¶ 218. Again, even if the allegation were sufficient under Rule 9(b) and accepted as true, like the prior statement it does not support a wire fraud claim for several reasons. First, as with the other alleged statement, it relates solely to vague and unspecific future expectations which are not a basis for a wire fraud claim. Second, the statement is clearly what the law recognizes as "puffery" or "sales talk." Such statements are insufficient to sustain a wire fraud allegation. *See Walther v. Patel,* 2011 WL 382752, at *7 (E.D. Pa. Feb. 4, 2011) ("subjective and unverifiable statements are more puffery than dirty pool, and are thus not actionable as mail or wire fraud."); *Maio v. Aetna, Inc.*, No. 99-1969, 1999 WL 800315, at *2 (E.D. Pa. Sept. 29, 1999) (dismissing RICO claim as a matter of law because statements relating to commitment or quality of care are puffery and not basis of fraud). Third, the statement is not false. Plaintiffs acknowledge that after entering into the Indiana Heights Loan, the loan was extended through amendment—as were all of the other loans. *See* FAC ¶ 229 (regarding Indiana Heights extension); FAC ¶ 269 (regarding extension of Midvale Loan); FAC ¶ 112 (regarding extension of Germantown Loan).

### b.      Plaintiffs Cannot Rely on Alleged Oral Representations.

Plaintiffs entire Complaint is premised on the contention that they understood their loan agreements meant something other than what was expressly set out in the Loan Documents. *See, e.g.,* FAC 107-109, 211-213, 253. However, each Loan Agreement contained an Integration clause barring Plaintiffs from relying on inconsistent or additional contract terms.

In signing an integration clause, "a party concedes that it has not <u>yet</u> been falsely induced to sign the contract." *Dansko Holdings, Inc. v. Benefit Trust Co.*, 991 F.3d 494, 500 (3d Cir. 2021) (emphasis in original). In *Morales v. Superior Living Products, LLC*, No. 07-4419, 2009 WL 3234434 (E.D. Pa. Sept. 30, 2009), the Court, in interpreting an integration clause almost the same

18

as the clause in the Loan Documents, found that "the Agreement [is] fully integrated. Therefore, plaintiffs are prohibited from recovering on any claims of fraud in the inducement." *Id.* at *7-8.

In this case, each Loan Agreement includes a clause stating:

> This Agreement and the other Loan Documents is intended to be the entire and final agreement of the parties concerning the subject matter hereof. The Agreement may not be amended or modified except by written agreement of Borrower and Lender.

FAC Exh. 1, ECF No. 30-1, § 19.8, p. 61. In addition, at several points in the loan agreements, each of the Plaintiffs acknowledge that it "[HAS] BEEN REPRESENTED (OR HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS AGREEMENT . . . BY INDEPENDENT LEGAL COUNSEL, SELECTED OF THEIR OWN FREE WILL . . . ." *See, e.g., Id.* § 19.6, p. 60. As such, Plaintiffs cannot claim to have been fraudulently induced to enter a contract with terms that were inconsistent with its understanding or incomplete. *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1300 (3d Cir. 1996) (dismissing fraudulent inducement claim involving "allegations of oral representations contrary to express terms of the agreement" where the contract had an integration clause); *Interwave Technology, Inc. v. Rockwell Automation, Inc.*, No. 05-398, 2005 WL 3605272, at *19 (E.D. Pa. Dec. 30, 2005) ("Fully integrated contracts preclude fraudulent inducement claims.").

### c.      Gist of the Action Doctrine Bars Wire Fraud Allegations.

Plaintiffs' complaints relating to the administration of the loan agreements also cannot serve as the basis for a wire fraud claim because the allegations sound exclusively in contract and are barred by the gist-of-the-action doctrine. In *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014), the Pennsylvania Supreme Court officially adopted the gist of the action doctrine, stating that:

19

> If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—*i.e.* a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract ….

*See also Dansko Holdings, Inc.,* 991 F.3d at 501 (stating that "a plaintiff cannot say that a defendant defrauded him just by reneging on a contractual promise"). In the wake of *Bruno*, courts have regularly held that the gist of the action doctrine bars fraudulent inducement claims. *See, e.g., Ohama v. Markowitz*, 434 F. Supp. 3d 303, 318-20 (E.D. Pa. 2020); *C.J. Hughes* Constr. *Co. Inc. v. EQM Gathering OPCO LLC,* No. 2:18-cv-168, 2020 WL 3448383, at \*11 (W.D. Pa. June 24, 2020). For example, in *Wen v. Willis,* 117 F. Supp. 3d 673, 681, 683 (E.D. Pa. 2015), this court held that the gist of the action doctrine barred a fraudulent inducement claim where the defendants and Wen entered an LLC agreement in which defendants promised "they would manage [Wen's $4 million investment] for his benefit, deliver a return on the investment, and guarantee the $4 million principal would be returned in full when the investment concluded." *Id.* at 677-78. However, Wen claimed that defendants subsequently drained the money out of his LLC account transferring nearly all of it to their own accounts. *Id.* at 679. Wen asserted claims for fraud and fraud in the inducement. *Id.* The defendants argued that Wen was precluded from bringing such claims under the gist-of-the-action doctrine because the promises they made were expressly covered by the LLC agreement. *Id.* at 680-81. The court agreed and in dismissing the claim stated:

> It is equally the case . . . that "[w]here the precontractual statements that are the basis for the fraudulent inducement claim concern specific duties that the parties later outlined in the alleged contract, courts have repeatedly dismissed such claims as sounding in contract and, thus, barred by the gist of the action doctrine."

*Id.* (quoting *Integrated Waves Ins, Inc. v. Goverdhanam*, 2010 WL 4910176 at \*11 (E.D. Pa. Nov. 30, 2010)); *see also Owen J. Roberts Sch. Dist. v. HTE, Inc.*, 2003 WL 735098 (E.D. Pa. Feb. 28, 2003) (applying gist of the action doctrine to a fraud in the inducement claim where the pre-

20

contractual statements were incorporated into the contract).

Whether the gist of the action doctrine applies is a question of law. *Crown Coal and Coke Co. v. Powhatan Mid-Vol Coal Sales LLC,* 929 F. Supp. 2d 460, 474 (W.D. Pa. 2013). Here, it could not be clearer that Plaintiffs' wire fraud allegations are based on actions that were specifically incorporated into and governed by the loan agreements. Indeed, Plaintiffs characterize the alleged racketeering predicate acts as the "failure to adhere to agreed-upon loan terms," (FAC ¶ 329), the "administration of [plaintiffs'] Loans by Defendants" (FAC ¶ 327) and that "the terms of the Loans were not honored by [Defendants]" (FAC ¶¶ 315, 358 (a)-(d)).[5]

Courts have been particularly vigilant in applying this rule to RICO claims so that plaintiffs "cannot successfully transmute [business contract disputes] into RICO claims by simply appending the terms 'false' and 'fraudulent.'" *See Kolar* 361 F. App'x at 362-366; *Sunlight Elec. Contracting Co. v. Turchi*, 918 F. Supp. 2d 392, 404-06 (E.D. Pa. 2013) (dismissing RICO claims where they were based on alleged contract breaches and not on deceit).

Finally, Plaintiffs have failed to identify any deceit or misrepresentation by Defendants. While Plaintiffs allege that they wanted a three-year term for their loans, they acknowledge that Loan Services told them it could only agree to a two-year term. *See, e.g.,* FAC ¶¶ 107, 109, 211-213, 253. Plaintiffs also ignore the fact that the extension provision they were hoping to take advantage of expressly required meeting certain conditions set forth in the Loan Documents. None of this was hidden from Plaintiffs. Each time Loan Services denied a draw request, in whole or in part, it provided a written determination with the contractual basis for the denial. There are no

---

[5]After Defendants pointed out that the initial Complaint includes the exact same underlying allegations in support of its breach of contract claim and RICO claims, Plaintiffs deleted all of those allegations from the FAC. Compare Compl. ECF No. 1 Count III and FAC, ECF No. 30 Count III.

21

allegations that anything was hidden or misrepresented in Loan Services' responses to those draw requests. *See, e.g., Kehr Packages*, 926 F.2d at 1416 (finding defendants' conduct was not "reasonably calculated to deceive a person of ordinary prudence and comprehension" where the communications identified in the record were transparent and contractual in nature).

### 2.    Plaintiffs Have Not Plausibly Pled Extortion As A Predicate Act.

Plaintiffs for the first time in the FAC attempt to transform Defendants' strict enforcement of their legal rights into a claim for extortion.[6] But all conduct Plaintiffs complain about is related to the lawful assertion of Loan Services' contractual rights – *i.e.,* enforcement of percentage completion requirements; documentation requirements; demands for release and additional consideration in exchange for contractual concessions.  In the Third Circuit, "[t]he use of economic fear to obtain property is wrongful only when the alleged extortionist has no lawful claim to the property." *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.,* 140 F.3d 494, 523 (3d Cir. 1998) (quoting *United States v. Enmons,* 410 U.S. 396, 400 (1973) (rejecting Hobbs Act predicate merely because defendants pursued legitimate economic interests). In business transactions between private parties "the alleged victim has no pre-existing right to pursue his business interests free of the fear he is quelling by receiving value in return for transferring property to the defendant." *Id.* at 525 (quoting *Viacom Int'l v. Icahn,* 747 F. Supp. 205 (S.D.N.Y. 1990)).

For this reason, Pennsylvania courts routinely reject attempts to transform commercial disputes and enforcement of contractual remedies into RICO extortion claims. *See, e.g., Care One Mgmt. LLC v. United Healthcare Workers East*, 43 F.4th 126, 149 (3d Cir. 2022) (use of regulatory processes, criminal processes, and advertising campaigns insufficient to constitute extortion);

---

[6]Plaintiffs' claims purport to be based on violations of the Hobbs Act, 18 U.S.C. § 1951, which prohibits the obtaining of property from another, with his consent, induced by wrongful use of actual force, violence, or fear. Plaintiffs also cite to 18 Pa. C.S. § 3923, but that statute does not create a federal RICO predicate act. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 488-413 (1985).

*Brokerage Concepts, Inc. v. United States Healthcare, Inc.*, 140 F.3d 494 (3d Cir. 1998) (economic pressure connected to legitimate business objectives insufficient to constitute extortion). And, Pennsylvania law does not permit courts to relieve parties of contractual obligations merely because the agreed terms later prove burdensome, harsh, or economically disadvantageous. *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250 (Pa. Super. 2006) (quoting *Third Nat. Bank & Tr. Co. of Scranton v. Lehigh Val. Coal Co.*, 44 A.2d 571, 574 (Pa. 1945)).

## IV.    Count II Should Be Dismissed.

Section 1962(d) makes it "unlawful for any person to conspire to violate" 18 U.S.C. §§ 1962(a)-(c). Because Plaintiffs' Section 1962(c) RICO claims are all substantively deficient, their Section 1962(d) conspiracy claim must also be dismissed. *Lightning Lube Inc. v. Witco Corp.,* 4 F.3d 1153, 1191 (3d Cir. 1993) (1962(d) claim must be dismissed if the underlying substantive claims are deficient).

## V.    Count III Should Be Dismissed.

Each Plaintiff asserts a claim for breach of contract against Loan Services. As noted above, each Plaintiff entered into a first amendment to the loan documents relevant to that borrower's loan.  Those claims should be dismissed.

### A.    Plaintiffs Have Released Loan Services of all Claims.

As discussed above, each first amendment for each loan contains a broad-based general release from each borrower to Loan Services. *See* page 3 *et seq., supra*. Accordingly, there is no breach of contract claim that may be asserted in this case.

### B.    There is No Breach of Contract.

Plaintiffs' breach of contract claim also fails because Plaintiffs do not point to an actual provision of the loan agreements that Loan Services breached. Plaintiffs only complain that Loan Services demanded strict compliance with the agreed-upon contract terms, *i.e.,* the agreements

would be dictated by "onerous requirements" (FAC ¶ 102); "Loan Services refused to engage in good faith negotiations to achieve a reasonable extension prior to the [Loans'] maturity date" (FAC ¶ 243); "Loan Services consistently denied Midvale's draw requests by rigidly applying 'percentage complete' metrics…" (FAC ¶ 257). None of these alleged actions gives rise to a breach of contract claim. The only actual contractual provision cited by Plaintiffs is section 7 of each promissory note, which allows for an extension of the loan maturity date with no corresponding increase in rate, *provided that Plaintiffs meet certain conditions*. In each instance, Plaintiffs expressly acknowledged in writing that they had not fulfilled the contract conditions for such an extension under the promissory note for each loan.  That Plaintiffs now regard the requirements of the contracts as onerous is irrelevant. "[F]reely negotiated agreements entered into at arm's length are generally enforced according to their terms to allow parties the benefit of their bargains." *See McMullen v. Kutz*, 985 A.2d 769, 778 (Pa. 2009).

Nor does the implied covenant of good faith and fair dealing provide Plaintiffs with any recourse.  It is axiomatic that the implied covenant "does not allow a court to override the express terms of the contract." *Curley v. Allstate Ins. Co.*, 289 F. Supp. 2d 614, 617 (E.D. Pa. 2003). Federal courts in the Third Circuit have repeatedly held that a lender does not violate the implied covenant of good faith and fair dealing by insisting on strict compliance with the terms of a written loan agreement. *Seal v. Riverside Federal Savings Bank*, 825 F. Supp. 686, 699 (E.D. Pa. 1993). In *Seal* the United States District Court for the Eastern District of Pennsylvania held that a lending institution does not violate a separate duty of good faith by adhering to its agreement with the borrower or by enforcing its legal and contractual rights as a creditor. *Id*. The court further explained that the duty of good faith imposed upon a contracting party does not compel a lender to surrender rights which it has been given by statute or by the terms of its contract. *Id.* This

principle applies in cases where borrowers sought loan modifications. In *Wells Fargo Bank, N.A. v. Chun Chin Yung,* 317 F. Supp. 3d 879, 888-89 (E.D. Pa. 2018), the court held that a lender did not breach the implied covenant of good faith and fair dealing by enforcing the express terms of the loan agreement and refusing to modify those terms on the borrower's demand.

Courts have recognized that lenders generally are not liable under the implied covenant for harm caused to a borrower by refusing to advance additional funds, to release collateral, or to assist in obtaining additional loans from third parties. *See, e.g., Creeger Brick and Building Supply Inc. v. Mid-State Bank & Trust Co.*, 560 A.2d 151, 154 (Pa. Super. 1989). This principle was reaffirmed in *Geesey v. CitiMortgage, Inc*., 135 F. Supp. 3d 332 (W.D. Pa. 2015), where the Western District of Pennsylvania held that a lender had no obligation to enter a loan modification and did not violate a separate duty of good faith by enforcing its contractual rights as a creditor. *Id.* at 346.

## VI.    Conclusion.

For all the foregoing reasons, Defendants respectfully request that this Honorable Court dismiss Plaintiffs' First Amended Complaint, with prejudice.

Respectfully submitted:

DENTONS US LLP


By: */s/ David F. Russey*_____
    David F. Russey, Esquire
    Pa. I.D. No. 84184
    Jared M. DeBona, Esquire
    Pa. I.D. No. 318528
    625 Liberty Avenue
    Pittsburgh, PA 15222
    Phone: (412) 297-4900
    Fax: (412) 209-1975
    david.russey@dentons.com
    jared.debona@dentons.com


*Counsel for Defendants, Saluda Grade Holdings,
LLC and Saluda Grade Asset Management, LLC*


WEIR LLP


By: _____
    Walter Weir, Jr., Esquire
    Pa. I.D. No. 23137
    David V. Dzara, Esquire
    Pa. I.D. No. 91274
    The Widener Building
    1339 Chestnut Street, Suite 500
    Philadelphia, PA 19107
    Phone/Fax: (215) 241-7751
    wweir@weirlawllp.com
    ddzara@weirlawllp.com

*Counsel for Defendants Construction Loan Services
II, LLC d/b/a or a/k/a Builders Capital, Valerie
Moses, Bill Finzer, Lynda Rodriguez, David
Schultz, Michele Howe and Curt Altig*

Dated:  May 26, 2026

26

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MIDVALE COMMONS, LLC, et al. | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | NO. 26-128 |
| | : | |
| CONSTRUCTION LOAN SERVICES II, | : | |
| LLC, et al. | : | |
| | : | |
| Defendants. | : | |

CERTIFICATE OF SERVICE

I, Walter Weir, Jr., Esquire, hereby certify that on May 26, 2026, Defendants' joint Motion

to Dismiss, Memorandum of Law in support of the motion, proposed Order, and this Certificate

of Service were electronically filed with the court via the Court's ECF System and served upon

counsel of record as follows:

Philip S. Rosenzweig, Esquire
Kevin D. McGowan, Jr., Esquire
Briana S. Bryant, Esquire
Silverang, Rosenzweig & Haltzman, LLC
Woodlands Center
900 E. 8th Avenue, Suite 300
King of Prussia, PA 19406
*Attorneys for Plaintiffs*

WEIR LLP

By: _____
Walter Weir, Jr., Esquire

Dated:  May 26, 2026