IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MIDVALE COMMONS, LLC, et al., <br><br> *Plaintiffs,* <br><br> v. <br><br> CONSTRUCTION LOAN SERVICES II, LLC d/b/a BUILDERS CAPITAL, et al., <br><br> *Defendants.* | Civil Action No. 2:26-cv-00128-HB |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

**<u>PRELIMINARY STATEMENT</u>**

Plaintiffs' Response to Defendants' Motion to Dismiss the First Amended Complaint ("FAC"), consists almost entirely of conclusory labels untethered to any actual fact allegations or actual contract language. Plaintiffs do not dispute that they are sophisticated parties nor that they had the opportunity to consult with counsel with respect to any of the Loan Agreements or the releases. Nevertheless, Plaintiffs argue that Defendants had no right to take actions in accordance with the terms of the Loan Agreements and that the plain-language releases they signed in exchange for loan modifications—again with full opportunity to consult with counsel—should simply be disregarded.

Plaintiffs complain that they were improperly denied certain draw request amounts but do not allege or even contend that they met the contract requirements entitling them to such draw amounts. Similarly, Plaintiffs claim it was improper for Defendants to deny them with certain terms for extensions to loan maturity dates but do not plead or even contend that they met the conditions for such extensions. Finally, Plaintiffs argue they should not have to adhere to the terms of releases provided in exchange for modifications to the loan agreements pursuant to which

Plaintiffs continued to draw down millions of dollars because they were facing economic pressure to complete their projects. None of Plaintiffs' arguments have merit and the Court should grant the motion to dismiss.

## ARGUMENT

## I.     PLAINTIFFS HAVE RELEASED ALL OF THEIR CLAIMS

Plaintiffs do not dispute that as sophisticated borrowers represented (or with the opportunity to be represented) by counsel they each signed loan amendments containing broad, bargained-for releases in exchange for valuable maturity extensions. Plaintiffs also do not dispute that under Pennsylvania law, a valid release is "an absolute bar to recovery for everything included in the release." *Dorenzo v. Gen. Motors Corp.*, 334 F. Supp. 1155, 1156 (E.D. Pa. 1971) (quoting *Mannke v. Benjamin Moore & Co.*, 375 F.2d 281, 285 (3d Cir. 1967)).

Plaintiffs argue that the Court cannot rule on the releases because they are not apparent on the face of the Complaint. A review of the FAC disposes of that argument. The releases are expressly referenced throughout the FAC (*see, e.g.,* ¶¶ 118, 231, 272, 277-281) and are all attached as exhibits to the FAC (FAC Exhs. 7, 39, 47). Thus, under the "Third Circuit Rule" Defendants' affirmative defense of release can be decided on the pleadings given the plain language of the releases. *PPG Indus., v. Generon IGS, Inc.*, 760 F. Supp. 2d 520, 525 (W.D. Pa. 2011) (considering a release at the motion to dismiss stage where the release was attached to the complaint); *see also Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (underlying rationale of the exception "is that the primary problem raised by looking at documents outside the complaint—lack of notice to the plaintiff—is dissipated '[w]here the plaintiff has actual notice…*and* has relied upon these documents in framing the complaint.'") (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)) (emphasis added).

### A.   Plaintiffs Knowingly Released Their Claims.

Plaintiffs argue the releases should not be enforced because they allegedly did not have knowledge of their claims prior to signing the releases. This is a remarkable statement given that the conduct alleged in the Complaint including the vast majority of the partial denials and the refusal to grant a loan extensions under Section 7.7 of the Loan Agreements occurred prior to the release date with full knowledge of the Plaintiffs as set forth in the FAC. Plaintiffs' argue that they should be relieved from the consequences of the releases because they were allegedly not aware that Loan Services consulted with Saluda (the owner of the loans) regarding a subsequent request for an additional loan modification is baseless. The law is clear that "no release can be set aside merely because at the time of the release the releasor was ignorant of the extent of his injuries or the identity of the persons released." *Dorenzo*, 334 F. Supp. at 1157. Moreover, the FAC is clear that Plaintiffs, from the beginning, knew the loans were going to be securitized and owned by Saluda. FAC ¶¶ 13, 107, 212-213, 219.

### B.   Plaintiffs Have Not Alleged Facts Showing the Releases Were Invalid for Duress.

Plaintiffs claim that the releases are invalid on the basis of duress is equally unavailing. Plaintiffs do not dispute that an executed release shifts the burden to the plaintiff to plead facts establishing invalidity. *Rothermel v. Jaguar Cars*, 1996 WL 182803, at *2 (E.D. Pa. Apr. 17, 1996). Plaintiffs argue that they signed the releases under economic duress because they were struggling to finance the underlying projects. But Plaintiffs provide no authority challenging the basic principle under Pennsylvania law that financial pressure is insufficient to establish duress as a matter of law." *Angino v. BB&T Bank,* 2016 WL 4408835, at *8 (M.D. Pa. June 7, 2016) ("Duress is not found when there is simple financial pressure); *see also Barris v. United States*, 1997 WL 459914, at *11 (W.D. Pa. Apr. 30, 1997) ("a threat to do what one has the legal right to do cannot

be considered duress"); *Three Rivers Motor Co. v. Ford Motor Co.*, 522 F.2d 885, 893 (3d Cir. 1975) ("merely…showing that the release was given under pressure of…financial circumstances" is insufficient); *Harris v. Fred S. James, P.A. Inc.*, 558 F.2d 886, 893 (3d Cir. 1975)(doctrine of duress does not apply merely because one enters an agreement h would not otherwise have entered if financial circumstances were more secure). Plaintiffs only response is their familiar refrain that Defendants somehow did not have the legal right to enforce the terms expressly set out in the Loan Agreements. The Loan Agreements, themselves, dispose of this argument.

Plaintiffs also try but fail to sidestep the well-settled principle under Pennsylvania law that where a party is represented by counsel or has the opportunity to consult counsel, duress is foreclosed as a matter of law. *Carrier v. William Penn Broadcasting Co.*, 233 A.2d 519, 521 (Pa. 1967); *Degenhardt v. Dillon Co.*, 669 A.2d 946, 952-53 (Pa. 1996); *Nayak v. McNees Wallace & Nurick LLC*, 2016 WL 7015711, at *8 (M.D. Pa. Sept. 13, 2016); *Hull v. Welex, Inc.*, 2002 WL 31887043, at *2 (E.D. Pa. Dec. 30, 2002); *Vacation Charters, Ltd. v. Textron Fin. Corp.*, 2016 WL 354094, at *8 (M.D. Pa. Jan. 28, 2016) (granting Rule 12(b)(6) dismissal where economic-duress claim failed to invalidate a release). Plaintiffs do not plead, or even suggest, they were not represented by counsel (or had the opportunity to consult with counsel) with respect to the releases. Plaintiffs attempt to distinguish *Carrier* and *Degenhardt* is based on a misreading of *dicta* in footnote 5 of the *Degenhardt* opinion. In that footnote, the Pennsylvania Supreme Court specifically *rejects* the argument that where the plaintiffs were allegedly placed in an inextricable financial crisis by defendant, the rule that there can be no duress if the plaintiff is represented by counsel should not apply. *Degenhardt*, 669 A.2d at 951 n.5 (rejecting appellees argument that the court should not bar a duress claim where plaintiff is in inextricable financial crisis). The *Degenhardt* court's unconditional ruling could not have been clearer: "Accordingly, we reaffirm

the rule of law articulated in *Carrier* that a party who has a reasonable opportunity to consult with legal counsel before entering into a contract cannot later invalidate the contract by claiming economic duress." *Id*. at 952.

Plaintiffs also argue that a release may be set aside for fraud citing *Dorenzo*. But *Dorenzo enforced* the release; in *dictum* it noted that a release, like any other contract could be invalidated in the face of "clear, precise, and indubitable evidence of fraud, accidental means, or incompetence." *Dorenzo*, 334 F. Supp. at 1156-57. Here, Plaintiffs have failed to plead any fraud with respect to the releases much with the particularity required under Fed. R. Civ. 9(b). Conclusory averments of "fraudulent concealment" (FAC ¶ 294) are not facts satisfying that standard.

Finally, Plaintiffs claim that some of the challenged conduct related to draw denials post-dates the releases. But they fail to tie any specific post-release denial to a plausible, particularized fraud or to any breached contractual provision. The few post-release "denials" are based on the exact same contractual criteria with respect to draw requests as the determinations made prior to the releases. Notably, Plaintiffs specifically acknowledged the lawfulness of the pre-release draw denials and extension determination in the releases. Specifically, Plaintiffs acknowledged that as of the time of the releases "Lender has not breached any of its obligations." FAC Exh. 7, ECF No. 30-7 at § 6; FAC Exh. 39, ECF No. 30-39 at § 6; FAC Exh. 47, ECF No. 30-47 at § 6.

### C.    Plaintiffs Accepted the Benefits of the Amendments Containing the Releases.

Plaintiff also has not provided a plausible argument that they did not ratify the amendments and releases by accepting their benefits. Plaintiffs do not dispute that they each continued to draw down significant funds post-amendment and the FAC pleads post-release draws under the modified loan agreements. FAC ¶¶ 141, 145-146, 150 (Trolley Car); ¶¶ 234, 237, 240 (Indiana Heights). It is well-settled that a party loses any economic-duress defense by accepting the benefits

of the challenged contract. *Universal Atl. Sys., Inc. v. Honeywell Int'l, Inc.*, 388 F. Supp. 3d 417, 432 (E.D. Pa. 2019); *Nat'l Auto Brokers Corp. v. Aleeda Dev. Corp.*, 364 A.2d 470, 476 (Pa. Super. 1976).

Plaintiffs' arguments regarding "mitigation" are wholly inapposite as is the case law they rely on. Notably, *S.J. Groves & Sons Co. v. Warner Co.*, 576 F.2d 524 (3d Cir. 1978), does not involve, duress, a release or ratification. It is a contract dispute involving cover for the sale of goods under the UCC. *Id.* at 528. Plaintiffs have no answer for the plain fact that they accepted the benefit of the bargain—extensions and continued funding—while disclaiming the releases that were the consideration for those benefits. Under such circumstances, a claim of duress is unavailable as a matter of law. Plaintiffs cannot accept extensions and millions of dollars in draws while simultaneously disclaiming the releases that were the *quid pro quo*.

## II.    COUNT I (RICO § 1962(C)) SHOULD BE DISMISSED

Independent of the releases, Count I fails because the FAC's own facts and exhibits describe lawful, fully-disclosed, contractually-grounded loan administration—not racketeering. To state a claim under § 1962(c), a plaintiff must plausibly allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010) (internal quotations omitted). Plaintiffs do not plausibly allege and their Response does not explain how the loan administration activities set forth in the FAC amount to wire fraud or extortion.

### A.    Plaintiffs Do Not Allege an Enterprise with a Common Fraudulent Purpose.

The facts (as opposed to labels, conclusions and conjecture) along with the FAC's exhibits demonstrate a "normal business relationship" between Saluda, Loan Services and its employees. Saluda was the ultimate purchaser of the loans originated by Builders and it retained Builders to administer the loans after their purchase. Loan Services, after originating the loans and selling

them to Saluda, serviced the loans pursuant to the Loan Agreements. Loan Services' employees performed ordinary servicing functions. Rather than some vague "loan to own" scheme, the facts and documents more plausibly demonstrate that Defendants acted to protect the $85 million of capital and earn a return on the investment—not to share a purpose to defraud borrowers. Indeed, Loan Servies granted extensions to every loan rather than foreclosing at the first opportunity (FAC Exhs. 7, 39, 47)—conduct irreconcilable with the alleged "loan-to-own" scheme.

Plaintiffs' pleading as to the alleged coordination between Saluda and Loan Services is threadbare. Moreover, Plaintiffs do not even address the fact that, as Defendants pointed out in their motion, the FAC does not include any specific racketeering activity undertaken by Saluda. Plaintiffs rely entirely on the conclusory allegation that "Saluda was directing the day-to-day administration of the loans." The only plead basis for this alleged coordination is a reference to an email communication from Loan Services to one of the Plaintiffs who was seeking an 18-month extension to its loan. In response to the extension request, Loan Services notified Plaintiffs they were working with Saluda (the owner of the loan) on responding to the request. FAC Exh. 41. The owner of a loan and the loan administrator discussing a potential modification to the loan is hardly outside a normal business relationship; it also in no way supports the notion that Saluda was directing the day-to-day administration of the loans.

Other than conclusory labels, Plaintiffs plead no facts showing how the loan owner, the lender/servicer, and the servicer's employees share a "common interest in Plaintiffs defaulting." Other than the vague "loan to own" mantra repeated throughout the FAC, Plaintiffs fail to explain how the owner of a loan, a loan servicer or the loan servicer employees stand to benefit from Plaintiffs' defaulting on $85 Million in loans.

### B.    Plaintiffs Fail to Allege a Pattern of Racketeering Activity.

A "pattern" requires at least two related predicate acts by each defendant posing a threat of continuity. 18 U.S.C. §§ 1962(c), 1961(5); *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Plaintiffs allege only wire fraud (18 U.S.C. § 1343) and Hobbs Act extortion (18 U.S.C. § 1951) as predicates. As a threshold matter, Plaintiffs fail to plead two predicate acts by Saluda or any individual employee. Moreover, Plaintiffs fail to plead facts establishing any wire fraud or extortion on behalf of any defendant.

### 1.    No Plausible Wire Fraud Allegation.

Plaintiffs' Response fails to identify facts plead with particularity that establish a "fraudulent misrepresentation or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004) (quoting *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1415 (3d Cir. 1991)).

### a.    No Reasonable Inference of Fraudulent or Deceptive Conduct.

The communications described in and attached to the FAC are transparent, contractual communications, consistent with the requirements of the Loan Agreements. Each draw denial was communicated and explained in writing, with its contractual basis identified. FAC Exhs. 8, 11, 14-29, 38-40, 44-45. Similarly, the extensions to the loan maturity dates were based on the Plaintiffs' failure to make satisfactory progress on construction, which Plaintiffs do not dispute. Such denial are fully consistent with the Loan Agreements. Transparent, contractual communications are not "reasonably calculated to deceive." *Kehr Packages*, 926 F.2d at 1416.

Plaintiffs recast approximately twenty ordinary loan-administration communications (*e.g.*, "after wire cutoff," "no clear invoice," partial-approval notices, a UCC demand) as fraud. But disagreeing with a lender's strict adherence to the terms of the parties' contracts does not make a draw denials "false." Plaintiffs fail to identify how any of the notices attached to the Complaint

are either false or inconsistent with the actual language of the Loan Agreements. Plaintiffs also fail to plead facts that show that they were actually entitled to the draw amounts denied under the written terms of the Loan Agreements. All partial denials Plaintiffs complain about were consistent with the terms of the Loan Agreements which conditioned draw payments on documentation, inspection and/or a completion percentage basis. FAC Exhs. 1-4, ECF Nos. 30-1-30-4 at §§ 5.3.

Plaintiffs cite to *SodexoMAGIC, LLC v. Drexel University*, 24 F.4th 183 (3d Cir. 2022), for the proposition that a promise made with no intent to perform can be actionable fraud. This, however, applies more accurately to Plaintiffs who signed loan agreements and releases with terms, according to their own FAC, they never expected to honor. Plaintiffs' entire FAC is premised on their contention that they were not required to adhere to the terms of the agreements they signed. Instead, they claim that Defendants, by acting consistent with the terms of the agreements, somehow engaged in fraud. Notably, as set out in the FAC, Defendants forthrightly refused to sign the Loan Agreements under terms originally sought by Plaintiffs and insisted on modifications. FAC ¶¶ 57-58, 213. Those modifications (a term of two years as opposed to three years) were agreed to by Plaintiffs. Now they claim, without any basis, that those terms should not be enforced.

### b.        *Plaintiffs Cannot Rely on Alleged Oral Representations.*

Each Loan Agreement contains an integration clause (§ 19.8) and an acknowledgment of representation (or opportunity for representation) by independent counsel (§ 19.6). By signing an integration clause, "a party concedes that it has not *yet* been falsely induced to sign the contract." *Dansko*, 991 F.3d at 500 (emphasis in original). Fully integrated contracts preclude fraudulent-inducement claims based on extrinsic representations. *Morales v. Superior Living Prods., LLC*, 2009 WL 3234434, at *7-8 (E.D. Pa. Sept. 30, 2009); *Interwave Tech., Inc. v. Rockwell*

9

*Automation, Inc.*, 2005 WL 3605272, at *19 (E.D. Pa. Dec. 30, 2005); *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1300 (3d Cir. 1996).

Plaintiffs have not even attempted to address Defendants' arguments on the only two "oral representations" identified in the FAC which relate only to Indiana Heights. The first—that the shorter loan term "was a formality and that extensions would be granted" (FAC ¶ 214)—is forward-looking, not demonstrably false (Indiana Heights in fact received an extension), and constitutes a non-actionable prediction of future conduct. *See Coleman v. Sears, Roebuck & Co.*, 319 F. Supp. 2d 544, 551 (W.D. Pa. 2003). Plaintiffs have no response to this point. The second alleged statement—that "Loan Services was focused on supporting developers, promptly funding draws, and avoiding foreclosure except in extreme cases" (FAC ¶ 218)—is classic non-actionable puffery. *Walther v. Patel*, 2011 WL 382752, at *7 (E.D. Pa. Feb. 4, 2011); *Maio v. Aetna, Inc.*, 1999 WL 800315, at *2 (E.D. Pa. Sept. 29, 1999). Again, Plaintiffs have no response.

### c.    The Gist of the Action Doctrine Bars the Wire Fraud Allegations.

Whether the gist of the action doctrine applies is a question of law. *Crown Coal & Coke Co. v. Powhatan Mid-Vol Coal Sales LLC*, 929 F. Supp. 2d 460, 474 (W.D. Pa. 2013). Where "the duty breached is one created by the parties by the terms of their contract," the claim sounds in contract, not tort. *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014); *Dansko*, 991 F.3d at 501. Courts are particularly vigilant in applying this doctrine to RICO claims so that plaintiffs cannot successfully transmute contract disputes into RICO claims by simply appending the terms "false" and "fraudulent." *Kolar v. Preferred Real Estate Investments, Inc.*, 361 Fed. App'x 354, 364 (3d Cir. 2010); *Sunlight Elec. Contracting Co. v. Turchi*, 918 F. Supp. 2d 392, 404-06 (E.D. Pa. 2013); *see also Wen v. Willis*, 117 F. Supp. 3d 673, 681-83 (E.D. Pa. 2015); *Ohama v. Markowitz*, 434 F.

Supp. 3d 303, 318-20 (E.D. Pa. 2020); *C.J. Hughes Constr. Co. v. EQM Gathering OPCO LLC*, 2020 WL 3448383, at *11 (W.D. Pa. June 24, 2020).

The FAC's own characterization of the predicate acts is dispositive. The FAC describes the predicate acts as the "failure to adhere to agreed-upon loan terms" (FAC ¶ 329), the "administration of [the] Loans" (FAC ¶ 327), and that "the terms of the Loans were not honored" (FAC ¶¶ 315, 358(a)–(d)). These are quintessential contract duties. The entire fraud theory is that Defendants did not perform their contractual obligations—which is breach of contract, not racketeering. That Plaintiffs completely misconstrue what the plain language of the contracts actually required does not change this basic principle. Plaintiffs' Response now argues that Defendants' precontractual actions gave rise to its claims. Plaintiffs point to no actual allegations in support of this argument. Confusingly, Plaintiffs again argue that Defendants had no intention of complying with the written terms of the Loan Agreements, but they fail to point to a single instance in which Defendants acted contrary to those terms. Indeed, the entire premise of Plaintiffs' FAC is that Defendants should not have enforced the terms as written.

Thus, the Response's reliance on *SodexoMAGIC* is unavailing. *SodexoMAGIC* found the doctrine inapplicable *only* because the duty at issue was a *precontractual* duty not to deceive that existed "with or without" the later contract—the misrepresentations preceded any binding agreement. *SodexoMAGIC*, 24 F.4th at 201-02. Here, by Plaintiffs' own pleading, the alleged misrepresentations *are* the written contract terms and their administration; there is no freestanding social duty independent of the loan documents. Moreover, as noted above, the Defendants specifically required the change to the Loan Agreements at issue. A change to which Plaintiffs elected to agree.

11

### 2.    *Plaintiffs Have Not Plausibly Plead Extortion as a Predicate Act.*

Plaintiffs do not dispute that pursuit of legitimate economic interests and enforcement of contractual remedies is not extortion. *Care One Mgmt. LLC v. United Healthcare Workers East*, 43 F.4th 126, 149 (3d Cir. 2022). Nor do they dispute that Pennsylvania law does not relieve parties of burdensome bargains. *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. Super. 2006); *Third Nat'l Bank & Tr. Co. of Scranton v. Lehigh Val. Coal Co.*, 44 A.2d 571, 574 (Pa. 1945). Those principles dispose of Plaintiffs' extortion arguments as a matter of law. Every "threat" Plaintiffs identify involves Loan Services' assertion of lawful contractual rights: enforcing percentage-completion and documentation conditions, and conditioning modifications to the loan terms on additional consideration and releases. Defendants had a lawful claim to insist on compliance and to negotiate the terms of any accommodation. That is, at most, hard bargaining, not extortion.

Plaintiffs also argue that the well-established rule set out in *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.* 140 F.3d 494, 523 (3d Cir. 1998), that economic fear is not duress, is distinguishable because Plaintiffs had a "pre-existing entitlement" to the "by-right extension" (§ 7.7, 0.00% increase; § 7.6, no first-extension fee) and to draw funding (§§ 5.1, 5.3). Like much of the Response, this argument depends on ignoring the actual language of the loan agreement—*i.e.*, reading out the percentage completion requirement of the provision for draw requests and extensions. The express language of the contract makes clear the extensions were not "entitlements" nor "by-right" extensions: Section 7 conditions any extension, among other requirements, on "satisfactory progress in construction … as determined by [Loan Services]," and Section 5.3 conditioned draw funding on documentation and percentage-of-completion requirements. Plaintiffs do not plead any facts showing they met these conditions—indeed, their failure to do so is the basis for the negotiated amendments.

12

## III.   COUNT II (§ 1962(D) RICO CONSPIRACY) SHOULD BE DISMISSED

A § 1962(d) conspiracy claim cannot survive where the substantive § 1962(c) claim is deficient. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993). Because Count I fails for the reasons set forth above, Count II necessarily fails as well.

## IV.   COUNT III (BREACH OF CONTRACT) SHOULD BE DISMISSED

### A.   Plaintiffs Have Released Loan Services of All Claims.

Each First Amendment contains a broad release running to Loan Services. The breach of contract claim is barred for the same reasons as the RICO claims (Section I *supra*). The releases include each Borrower's express acknowledgment that "Lender has not breached any of its obligations under the Loan Documents"—a concession fatal to a breach claim here which Plaintiffs assert is based on the alleged failure to adhere to the extension provisions in Section 7.7 (discussed above) and the denial of draws using criteria inconsistent with Section 5.3 (also discussed above).

### B.   There Is No Breach of Contract.

A breach of contract claim requires identification of a specific contractual provision that was breached. Plaintiffs complain only that Loan Services demanded strict compliance with agreed terms (FAC ¶ 102 "onerous requirements"; ¶ 243 refusal to negotiate a "reasonable extension"; ¶ 257 "rigidly applying 'percentage complete' metrics"). Insisting on the benefit of one's bargain is not a breach. Nor does the implied covenant of good faith and fair dealing compel a lender to surrender contractual or statutory rights, advance additional funds, release collateral, or modify a loan on the borrower's demand. *Creeger Brick & Bldg. Supply Inc. v. Mid-State Bank & Trust Co.*, 560 A.2d 151, 154 (Pa. Super. 1989); *Geesey v. CitiMortgage, Inc.*, 135 F. Supp. 3d 332, 346 (W.D. Pa. 2015); *Wells Fargo Bank, N.A. v. Chun Chin Yung*, 317 F. Supp. 3d 879, 888-89 (E.D. Pa. 2018); *Seal v. Riverside Fed. Sav. Bank*, 825 F. Supp. 686, 698-99 (E.D. Pa. 1993).

Plaintiffs claim Loan Services breached Sections 7.7, 7.6, 5.1, and 5.3 of the Loan Agreements relating to extensions of the maturity date (Section 7) and Draw Requests (Section 5). However, Plaintiffs ignore the actual language of the provisions and have not plead anything that could be considered a breach.

First, what Plaintiffs refer to as the Section 7.7/7.6 "by-right extension" is not in any way a "by-right extension" nor does the Loan Agreement refer to it as such. Again, Plaintiffs ignore language that does not fit their narrative. Section 7 of the Promissory Notes clearly states that Plaintiffs may obtain an extension "only upon Borrower's satisfaction or Lender's waiver in its sole discretion of the following conditions;" and Section 7.2 expressly conditions an extension on "satisfactory progress in construction of the Project in accordance with the Loan Agreement…." *See, e.g.,* FAC Exh. 30-1, p. 99. Plaintiffs do not even pretend and have not plead that they met that condition.  Negotiating an amendment in lieu of granting an extension Plaintiffs were not otherwise entitled to was not a breach; it was a commercially reasonable accommodation.

Similarly, Sections 5.1 and 5.3 of the Loan Agreements vested Loan Services with contractual discretion to evaluate draws against documentation and percentage-of-completion. *See* FAC Exh. 30-1 pp. 50-51. Nowhere in the FAC do Plaintiffs plead facts showing they had complied with the draw requirements for the amounts excluded by Loan Services. Notably, Plaintiffs never contend that they met the percentage complete requirements for the draw requests that were denied. All written determinations regarding partial denial of a draw requests were consistent with the requirements of Sections 5.1 and 5.3.

Finally, recognizing they failed to meet the conditions required for an extension, Plaintiffs seek to invoke the prevention doctrine (Restatement (Second) of Contracts § 245) which fares no better. That doctrine presupposes "wrongful conduct"—a prior breach—which Plaintiffs have not

plausibly pleaded, nor have they plead facts that would show that, but for any action of Defendants, they would have reached the requisite completion milestones. Accordingly, the doctrine fails.

## V.   CONCLUSION

For the foregoing reasons, and those set forth in the opening Memorandum of Law (ECF 32), the FAC fails as a matter of law. Plaintiffs have not sought leave to further amend the FAC, recognizing any such attempted amendment would be futile. As such, Defendants respectfully request that the Court grant the Motion to Dismiss and dismiss the FAC with prejudice.

Dated: June 30, 2026

Respectfully submitted,

**WEIR LLP**

*/s/ Walter Weir, Jr.*
Walter Weir, Jr., Esquire
David V. Dzara, Esquire
Pa. I.D. Nos. 23137/91274
The Widener Building
1339 Chestnut Street, Suite 500
Philadelphia, PA 19107
Telephone: (215) 665-8181

*Counsel for Defendants Construction Loan
Services II, LLC, d/b/a or a/k/a Builders Capital,
Valerie Moses, Bill Finzer, Lynda Rodriguez,
Davis Schultz, Michele Howe, and Curt Altig*

**DENTONS COHEN & GRIGSBY, P.C./
DENTONS US LLP**

*/s/ David F. Russey*
David F. Russey, Esquire
Pa. I.D. No. 84184
Jared M. DeBona, Esquire
Drew W. Marrocco, Esquire (Pro Hac Vice)
Louis A. Pellegrino, Esquire (Pro Hac Vice)
625 Liberty Avenue
Pittsburgh, PA 15222
Telephone: (412) 297-4900

*Counsel for Saluda Grade Holdings, LLC
and Saluda Grade Asset Management, LLC*

15

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MIDVALE COMMONS, LLC, et al.,<br><br>　　　　*Plaintiffs,*<br><br>　　v.<br><br>CONSTRUCTION LOAN SERVICES II,<br>LLC d/b/a BUILDERS CAPITAL, et al.,<br><br>　　　　*Defendants.* | Civil Action No. 2:26-cv-00128-HB |

## **<u>CERTIFICATE OF SERVICE</u>**

I, Walter Weir, Jr., Esquire, hereby certify that on June 30, 2026, a true and correct copy of the foregoing Defendants' Reply Memorandum of Law in Further Support of Their Motion to Dismiss the First Amended Complaint was electronically filed with the Court's ECF System and served upon counsel of record as follows:

Philip S. Rosenzweig, Esquire
Kevin D. McGowan, Jr., Esquire
Briana S. Bryant, Esquire
Silverang, Rosenzweig & Haltzman, LLC
Woodlands Center
900 E. 8th Avenue, Suite 300
King of Prussia, PA 19406
*Attorneys for Plaintiffs*

　　　　　　　　　　　　　　*/s/ Walter Weir, Jr.*
　　　　　　　　　　　　　　Walter Weir, Jr., Esquire