IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MIDVALE COMMONS, LLC, et al. | : | CIVIL ACTION |
| v. | : | |
| CONSTRUCTION LOAN SERVICES II, LLC, et al. | : | NO. 26-128 |

MEMORANDUM

Bartle, J. September 29, 2026

Plaintiffs Midvale Commons LLC ("Midvale"), Trolley Car Development L.P. ("Trolley Car"), Indiana Heights LLC ("Indiana Heights"), and Plymouth Square Associates I ("Plymouth Square"), all related real estate developers controlled in full or in part by non-party Glenn Falso, have sued defendants Construction Loan Services II LLC ("Loan Services"), Saluda Grade Holdings LLC ("Saluda Holdings"), and Saluda Grade Asset Management LLC ("Saluda Asset Management"), who were lenders to plaintiffs under construction project loan agreements. Plaintiffs have also named as defendants individuals employed by Loan Services: Valerie Moses, Vice President of Servicing and Special Assets; Bill Finzer, Special Assets officer; Lynda Rodriguez, Special Assets officer; David Schultz, Special Asset officer; Michele Howe, Special Asset officer; and Curt Altig, Chairman and Founder.

Plaintiffs aver that defendants are liable to them under the Racketeer Influenced and Corrupt Organizations Act

(RICO) for participating in an enterprise that conducted a pattern of racketeering activity under 18 U.S.C. § 1962(c) (Count I) and for conspiracy to engage in a pattern of racketeering activity under 18 U.S.C. § 1962(d) (Count II). In addition, Plaintiffs bring claims for breaches of the terms of loan agreements (Count III).

Before the court is the motion of defendants to dismiss the First Amended Complaint of plaintiffs under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

I

For present purposes, the court must accept as true all well-pleaded facts in the First Amended Complaint of plaintiffs. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The court may also consider "exhibits attached to the complaint and matters of public record." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citing 5A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)). When there is a document "integral to or explicitly relied upon in the complaint," it may also be considered as there is no concern of lack of notice to the plaintiff. See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (quoting In re Burlington Coat

Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (quotation marks omitted)). The court may also take judicial notice of matters of public record. See id.

Plaintiffs must allege sufficient factual content to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The pleading must contain more than "labels and conclusions." Twombly, 550 U.S. at 545. It must plead more than "a formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557) (internal quotations and alterations omitted).

II

The following facts, taken as true for present purposes, are as follows:

Plaintiffs, real estate developers, each obtained loans from defendant Loan Services for several construction projects. Plaintiffs Indiana Heights and Plymouth Square secured two loans from Loan Services in connection with the "Indiana Heights Project," a construction project located at 3417 W. Indiana Avenue in Philadelphia. Plaintiff Trolley Car acquired one loan from Loan Services in connection with the "Germantown Project," the development of real property located at 7611-17 Germantown Avenue in Philadelphia. Plaintiff Midvale

secured one loan from Loan Services in connection with the "Midvale Project," the refinancing and construction of a mixed-use building at 3503 Midvale Avenue in Philadelphia.

The loans, which are subject to various loan documents, were negotiated and signed between the respective plaintiffs and defendant Loan Services. Defendants Saluda Holdings and Saluda Asset Management (for present purposes, these two defendants can be considered one entity and will be referred to as "Saluda Grade") helped underwrite the loans and are the current owners of the loans.[1]

During negotiations, Plaintiffs knew that Saluda Grade was Loan Services' capital partner who provided the capital undergirding the loans. Although Loan Services was the only defendant that signed the loan agreement documents, Loan Services needed approval from Saluda Grade on the terms of the loan. This occasionally led to changes in the loan agreement terms, which Plaintiffs ultimately accepted.

Plaintiffs understood that Loan Services would manage the loan on a day-to-day basis and decide on draw requests from plaintiffs. Plaintiffs, however, did not have any understanding that Saluda Grade would be involved in daily operational

1. The First Amended Complaint does not explain how Saluda Grade acquired the loans.

decision-making. Plaintiffs allege that Saluda Grade was in fact involved in granting or denying draw requests and other loan management decisions.

Although there are four different loans across three different projects, the general sequence of events was similar. First, plaintiffs and Loan Services negotiated the loan agreements. Plaintiffs required certain terms to be included. Principally, plaintiffs mandated that the first extension of the loans' maturity date not be subject to an extension fee and that there would be no interest rate increases associated with any extensions. The promissory notes ultimately included these terms. The parties agreed to substantially similar language in all four loan agreements.

As the projects began, plaintiffs made draw requests in accordance with the loan documents. For the first twelve to eighteen months, draw requests were fulfilled to all parties' satisfaction. However, subsequent draw requests were delayed or rejected. According to plaintiffs, these delays and denials were based on pretextual reasons, "baseless and haphazard," and "contrary to the terms of the Loan Documents." First Amended Complaint at 17, Doc. # 30.

When the initial maturity dates of the loans arrived, Loan Services refused to grant plaintiffs a fee-free extension

at the same interest rate. Loan Services claimed discretionary denials of the requests for extensions, arguing that the agreed-upon extension language was applicable only if there was "satisfactory progress in construction of the Project[s] . . . as determined by [Loan Services]."

Under financial pressure to continue construction, plaintiffs maintain they were forced to sign amendments to the original loan agreements in order to extend the maturity dates of the loans. These amendments imposed extension fees and increased interest rates. The specific extension fee and interest rate hike varied by loan.

The amendments also include releases. The releases provide that all claims against defendants are extinguished for fraud, misrepresentation, lender misconduct, lender liability, breach of alleged fiduciary duty, or other tort or wrongdoing that plaintiffs had knowledge of at the time the amendments were signed. First Amended Complaint Ex. 7, Doc. # 30-7 at 3, 4.

The projects either remain incomplete or were completed with higher-than-expected costs, altered specifications, alleged lost profits, or any combination thereof.

Plaintiffs allege that the actions of defendants were part of a fraudulent scheme rather than good faith business

decisions. The defendants effectuated delays and denials to exert financial stress on the projects and create the leverage needed to force plaintiffs to agree to the amendments. Plaintiffs assert that their agreements to the amendments were coerced and signed under economic duress caused by the breaches of the original agreements by defendants.

Plaintiffs aver that defendants Loan Services, Saluda Grade, and the individual defendants conspired to and did in fact conduct and participate in a RICO enterprise through a pattern of racketeering activity under 18 U.S.C. § 1962(c) (Count I) and 18 U.S.C. § 1962(d) (Count II).

Plaintiffs also bring claims for breaches of contract (Count III), alleging that defendants breached the original loan agreements by wrongfully denying and delaying draw requests as well as refusing to honor the terms connected with the first extension.

III

Defendants first argue that Counts I and II under 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d) should be dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The RICO Act allows a private litigant to recover damages for injuries incurred because of a defendant's violation of the act. 18 U.S.C. § 1964(c). To state a claim under 18 U.S.C. § 1962(c), a plaintiff must adequately plead: (1) conduct; (2) of an enterprise; (3) through a pattern; and (4) of racketeering activity. Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985).

The Act defines racketeering activity through a list of qualifying activities commonly referred to as predicate acts. 18 U.S.C. § 1961(1). Plaintiffs maintain that defendants engaged in predicate acts which constitute mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), and extortion (18 U.S.C. § 1951). For civil RICO claims, plaintiffs need only meet the preponderance of the evidence standard for the underlying predicate acts. United States v. Local 560 of Int'l Bhd. Of Teamsters, 780 F.2d 267, 279 n.12 (3d Cir. 1985).

Defendants argue that plaintiffs failed to state a § 1962(c) claim because they have not properly pleaded an association-in-fact enterprise, a pattern of racketeering activity as to the individual defendants or Saluda Grade, or predicate acts of wire fraud, mail fraud, or extortion. Even assuming arguendo that plaintiffs properly pleaded an association-in-fact enterprise and a pattern of racketeering

activity, plaintiffs have failed to state a § 1962(c) claim because the predicate acts were insufficiently pleaded.

The federal mail fraud and wire fraud statutes require: 1) the existence of a scheme to defraud; 2) the use of mails or wires in furtherance of the fraudulent scheme; and 3) culpable participation by the defendant. 18 U.S.C. § 1341; 18 U.S.C. § 1343; United States v. Pearlstein, 576 F.2d 531, 534 (3d Cir. 1978); United States v. Andrews, 681 F.3d 509, 518 (3d Cir. 2012). The falsehoods in the scheme must be "material." Neder v. United States, 527 U.S. 1, 25 (1999). For present purposes, the federal mail and wire fraud statutes are analyzed identically save for the method of transmission. United States v. Frey, 42 F.3d 795, 797 (3d Cir. 1994).

The predicate acts of mail and wire fraud require that the plaintiff meet the heightened pleading standard under Rule 9(b) of the Federal Rules of Civil Procedure, which reads that a party alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); see, e.g., Grant v. Turner, 505 F. App'x 107, 111 (3d Cir. 2012).

The Court of Appeals for the Third Circuit has interpreted Rule 9(b) as requiring plaintiffs to plead the date, time, and place of the alleged fraud, or otherwise "inject precision or some measure of substantiation into a fraud

allegation." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007) (citing Lum v. Bank of America, 361 F.3d 217, 223-224 (3d Cir.2004)). The alleged mail or wire fraud scheme "need not be fraudulent on its face, but must involve some sort of fraudulent misrepresentation or omission reasonably calculated to deceive persons of ordinary prudence and comprehension." Lum, 361 F.3d at 223 (quoting Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 528 (3d Cir.1998)).

RICO claims premised on predicate acts of mail or wire fraud "must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." Kolar v. Preferred Real Est. Invs., Inc., 361 F. App'x 354, 363 (3d Cir. 2010) (quoting Western Assocs. Ltd. P'ship v. Market Square Assocs., 235 F.3d 629, 637 (D.C. Cir.2001)). Allegations of acts that may be wrongful as a matter of contract law are not necessarily properly pleaded predicate acts simply because the injured party appends the term "false" or "fraudulent." Kolar, 361 F. App'x at 363-64.

The First Amended Complaint alleges that defendants committed mail and wire fraud by transmitting information through these mediums with the intent to defraud plaintiffs and obtain money by means of false pretenses or representations.

First Amended Complaint at 58, Doc. # 30. According to the First Amended Complaint, the transmissions included false or misleading statements or omissions regarding the terms of the loan, the underwriting process, the administration of the loans, and the "loan-to-own" scheme.

Plaintiffs focus on a letter of intent for material terms of the loan agreement that defendants did not intend to honor, sections of the promissory note that the defendants did not intend to honor, and multiple examples of draw requests that were delayed or denied because of pretextual reasons. First Amended Complaint at 60, Doc. # 30.

These allegations are insufficient to properly state a civil RICO claim under § 1962(c) because they do not specifically allege actions by the defendants that were reasonably calculated to deceive persons of ordinary prudence and comprehension. See Lum, 361 F.3d at 223. All the delayed or denied draw requests sound in breach of contract, even while reading the facts most favorably to the plaintiffs. Plaintiffs attempt to characterize these transactions as mail and wire fraud merely by claiming in a conclusory manner that they were "pretextual" without any injection of precision or substantiation. A plaintiff cannot transmute contract claims into RICO claims simply by appending the terms "false" and

"fraudulent." See Kolar, 361 F. App'x at 363; see also Annulli v. Panikkar, 200 F.3d 189, 199 (3d Cir. 1999).

Plaintiffs claim that the statement of defendant Curt Altig that "Saluda is involved with [Loan Service's] team daily" confirms that "delay tactics were being directed by or coordinated with Saluda Grade." First Amended Complaint at 47, Doc. # 30. The statement implies that a loan servicer and their capital partner are communicating regarding a loan, which is hardly surprising. Plaintiffs attempt to recast this vague statement into an admission of a deeper "loan-to-own" fraudulent scheme. This is a "naked assertion" that fails to inject sufficient precision or substantiation into the mail and wire fraud allegations. See Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). The "gravamen of the offense is the scheme to defraud," yet plaintiffs fail to plead plausible facts showing the existence of a scheme beyond mere allegations of breach of contract. Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 647 (2008).

The other alleged mail and wire fraud predicate acts similarly do not meet the heightened pleading standard under Rule 9(b) of the Federal Rules of Civil Procedure. Plaintiffs claim that the following two transactions were fraudulent because they were false when made and defendants never intended

to honor them: the letter of intent representing material loan terms and the communication that a compressed maturity date was a formality that would be extended. These allegations are insufficient to uphold a mail or wire fraud pleading because plaintiffs do not allege any precise or substantiated facts showing that defendants had a contemporaneous intent to defraud. A promise of future intent does not constitute a misrepresentation unless the promisor, at the time the promise was made, had no present intention of fulfilling it. See Mellon Bank Corp. v. First Union Real Estate Equity and Mortg. Invs., 951 F.2d 1399, 1410 (3d Cir.1991).

Plaintiffs also allege extortion under the Hobbs Act as a predicate act. The Hobbs Act defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). The Court of Appeals for the Third Circuit has concluded that the term "fear" includes the fear of economic loss. United States v. Addonizio, 451 F.2d 49, 72 (3d Cir.1972). However, that fear must be wrongfully induced, not merely present. Brokerage Concepts, 140 F.3d at 523. For the use of economic fear to be considered wrongful, the alleged extortionist must utilize the fear of economic loss to obtain property to which he has no

lawful claim. Id. at 522; United States v. Enmons, 410 U.S. 396, 399-400 (1973).

Plaintiffs claim that defendants engaged in extortion by wrongfully withholding "construction draws to which Plaintiffs were contractually entitled," which, combined with other delay tactics, induced a wrongful fear of economic loss that left plaintiffs with no choice but to sign the amendments to the loan agreements. First Amended Complaint at 59, Doc. # 30.

These allegations are inadequate to uphold a civil RICO claim under § 1962(c) because defendants were not attempting to obtain property to which they had no lawful claim. The question of whether defendants breached their contractual duties remains open. The alleged predicate acts merely evidence a contract dispute, not a bona fide extortion allegation. When a party genuinely believes it has an entitlement to property under a contract, they do not commit extortion by attempting to obtain it. See Brokerage Concepts, 140 F.3d at 524 (adopting the rule from United States v. Sturm, 870 F.2d 769, 774 (1st Cir. 1989).

Accordingly, plaintiffs have failed to state a RICO claim under 18 U.S.C. § 1962(c) as they have not adequately pleaded any predicate acts. They do not meet the heightened

pleading requirements because they do not plead the date, time, and place of the alleged fraud, or otherwise "inject precision or some measure of substantiation" into their claims. Frederico, 507 F.3d at 200. Since plaintiffs have not stated a claim under 18 U.S.C. § 1962(c), it follows that the 18 U.S.C. § 1962(d) conspiracy claim also fails. See Ne. Revenue Servs., LLC v. Maps Indeed, Inc., 685 F. App'x 96, 102 (3d Cir. 2017) (citing Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1191 (3d Cir. 1993)).

IV.

Defendant Loan Services further argues that plaintiffs breach of contract claims should be dismissed because plaintiffs do not specify provisions of the loan agreements that Loan Services breached and because plaintiffs have released Loan Services from these claims.

Under Pennsylvania law, a plaintiff must plead "(1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages." Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C., 137 A.3d 1247, 1258 (Pa. 2016).

Here, plaintiffs adequately allege all required elements. Plaintiffs plead that contracts existed based on the attached loan agreement documents. Plaintiffs specifically

allege that Loan Services breached the contract by refusing to fund draws or imposing pretextual delays on approved funds (breaching Sections 5.1 and 5.3 of the Loan Agreement) and refusing to honor the fee-free first extension at the original interest rate (breaching Sections 7.6 and 7.7 of the Promissory Note). Finally, plaintiffs assert they suffered damages from the breaches in the form of extension fees, increased interest, increased carrying costs, increased material and labor costs, and reputational and relationship harm, among others.

Defendant also argues that releases signed by plaintiffs bar breach of contract claims. This argument fails at this stage of the case. The language of the releases with respect to each loan states:

> 6. RELEASE. Borrower and Guarantor agree that Lender has not breached any of its obligations under the Loan Documents, and Borrower and Guarantor have no claims against Lender, its predecessors, successors, assigns, or participants, or any of their officers, directors, agents, employees, and other affiliates (collectively, the "Released Parties") for fraud, misrepresentation, lender misconduct, lender liability, breach of alleged fiduciary duty, or other tort or wrongdoing. <u>Borrower and Guarantor hereby release and forever discharge the Released Parties of and from any and all claims</u>, causes of action, rights of offset, and rights to damages that Borrower or any Guarantor has or may have, or may be entitled to assert, against the Released Parties <u>for any reason whatsoever by reason of any actions, events, or occurrences prior to the date of this Amendment that Borrower or any Guarantor has knowledge of as of the date of this Amendment</u>, except for Borrower's rights to enforce Lender's further obligations under the Loan Documents, as

> amended hereby. The provisions, waivers, and releases set forth in this section are binding upon Borrower and Guarantor and their respective agents, employees, representatives, officers, directors, partners, members, joint venturers, affiliates, assigns, heirs, successors-in-interest, and shareholders. Neither Borrower nor any Guarantor have any claims, defenses, counterclaims, or rights of offset against any of the Released Parties arising out of or in any way connected with the Loan.
>
> First Amended Complaint Ex. 7, Doc. # 30-7 at 3, 4(emphasis added).

The releases do not affect actions after the release date, and plaintiffs have specified such breaches. The releases only discharge claims plaintiffs had "knowledge of as of the date" of the amendments. The factual question of what knowledge plaintiffs had at the time the releases were signed remains open.

Therefore, the court finds that the plaintiffs have alleged well-pleaded facts sufficient to state a plausible claim for a breach of contract. Whether Loan Services in fact breached its contractual obligations and whether the releases bar these claims are questions to be resolved on a later day.